O'DONNELL *v.* LIQUOR CONTROL COMMISSION.

VALIND *v.* SAME.

DALEY *v.* SAME.

1. OFFICERS—WAR VETERANS AS STATE EMPLOYEES—DISMISSAL FOR POLITICAL REASONS.

Dismissal of honorably discharged war veterans as employees of a State commission for political reasons *held,* wholly void, where there was a failure to act in good faith on part of the commission either in the original dismissal or the feeble attempts at re-employment elsewhere or at temporary positions (1 Comp. Laws 1929, § 900 *et seq.,* as amended).

2. SAME—CIVIL SERVICE—WAR VETERANS—QUALIFYING EXAMINATIONS.

Six-months limitation for taking qualifying examinations, contained in civil service act, *held,* directory and not mandatory so far as it concerned plaintiffs, employees of a State commission who were honorably discharged war veterans illegally dismissed by a State commission prior to time civil service act became effective and prevented from taking examinations by the improper action of the commission (1 Comp. Laws 1929, § 900 *et seq.,* as amended; Act No. 346, § 24, Pub. Acts 1937).

3. SAME—CIVIL SERVICE—QUALIFYING EXAMINATIONS—WAR VETERANS NOT EXEMPT.

War veterans are not exempt from obligation of taking qualifying examinations under the civil service act, enacted subsequently to the veterans' preference act (1 Comp. Laws 1929, § 900 *et seq.,* as amended; Act No. 346, §§ 24, 28, Pub. Acts 1937).

4. SAME—RESTORATION AS PUBLIC EMPLOYEES.

Restoration to status of employees of war veterans who had been illegally dismissed from employment by a State commission prior to effective date of civil service act to such, or similar,

employment is conditioned upon their successful completion of qualifying examinations prescribed by the civil service act (1 Comp. Laws 1929, § 900 *et seq.,* as. amended; Act No. 346, §§ 24, 28, Pub. Acts 1937).

5. MANDAMUS—COSTS—PROCEEDING AGAINST STATE.
    No costs are allowed in mandamus proceeding against the State which was not brought by public officers, in absence of provisions for assessment of costs against the State.

Separate petitions for writs of mandamus by Frank O'Donnell, William Valind, and Gerald J. Daley to compel the Liquor Control Commission of the State of Michigan to reinstate them in positions where formerly employed. Submitted March 21, 1939. (Calendar Nos. 39,896–39,898.) Writs granted April 4, 1939.

*T. J. Rushton* and *H. J. Rushton,* for plaintiffs.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for defendant.

BUTZEL, C. J. Petitioners are honorably discharged war veterans who were employed in various capacities by the State liquor control commission at Escanaba, Michigan. O'Donnell was employed as a watchman, Valind as a clerk, and Daley as a truck driver. On or about March 29, 1937, Daley and Valind each received a notice signed by the commissioner, expressing the commission's appreciation of their services, but summarily discharging them without further notice, except that O'Donnell's notice, dated April 12, informed him that his services were terminated ''as of April 15th.'' The record shows that these dismissals were solely for political reasons. Petitioners, in a protest to the governor, de-

manded a hearing. On September 3, 1937, the governor signed identical orders in all three cases and stated that in each case a hearing had been held and that the petitioner was to be reinstated. As a consequence of this order, Daley was informed by the commissioner that he could act as a helper on the truck of a private trucking company which had been used in hauling liquor for the defendant. This was to be on an hourly basis, whereas Daley had formerly been employed as truck driver at a weekly wage. He also learned that the particular truck on which work was offered was to be discontinued from operation; the truck was discontinued three months later. Petitioners Valind and O'Donnell were told that two jobs were open in Detroit, over 400 miles distant from Escanaba. As acceptance of such positions would have required removal of their families from Escanaba, they asked if assurance could be given that the jobs were permanent or that they would be available to them when they reached Detroit. The commissioner refused to give such assurance.

Dissatisfied with such treatment, petitioners declined to accept the reassignments offered them and instituted mandamus proceedings to compel actual restoration to their former positions in respondent's employ. An order of reference to the circuit judge of the twelfth judicial circuit was made by this court for the purpose of having testimony taken; by stipulation of counsel, the testimony was taken by the circuit judge of the twenty-fifth circuit. With commendable fairness, the attorney general concedes that the petitioners have been unjustly dealt with and the sole question presented is what relief, if any, can be given them.

As found by the governor, discharge of petitioners was without proper cause and notice, in violation of the veterans' preference act, 1 Comp. Laws 1929, § 900 *et seq.* (Stat. Ann. § 4.1221 *et seq.*). In dismissing the petitioners, the commission failed to act in good faith within the rule laid down in *Smith* v. *Flint City Commission,* 258 Mich. 698; *Brand* v. *Common Council of the City of Detroit,* 271 Mich. 221; *Fricke* v. *City of Grand Rapids,* 278 Mich. 323. Nor can we regard the feeble gestures toward reemployment of petitioners to have been a good faith compliance with the governor's order. The record does not disclose an honest attempt by defendant to reemploy these men as was required.

As found by the circuit judge, when petitioners were discharged, their places were filled by persons recommended by the county committee of the dominant political party. In May, 1938, those persons were still holding the positions. From the record we are unable to determine whether those positions remain filled, or whether, in fact, under the constant shifting and rearrangement of liquor stores, the positions have themselves been abolished. Petitioners recognize that reinstatement in the exact jobs they formerly occupied may be impossible, and have asked in the alternative that the commission be compelled to accept them as employees whose status as employees remains unaltered by the intervening illegal discharge. Since the discharge was wholly void, it must follow that their status as employees persists.

Subsequent to their discharge, however, the State civil service act, Act No. 346, Pub. Acts 1937 (Comp. Laws Supp. 1937, § 402–1 *et seq.,* Stat. Ann. 1938 Cum. Supp. § 3.951, *et seq.*), was passed. This became effective January 1, 1938, which was several months after the orders of the governor reinstating

petitioners. Section 24 of this act (Comp. Laws Supp. 1937, § 402–24, Stat. Ann. 1938 Cum. Supp. § 3.974) provided that all persons holding positions under classified civil service should be deemed to be holding their positions temporarily until their capabilities could be ascertained by qualifying examinations, "which qualifying examinations shall be completed' within six months from the effective date" of the statute. It is conceded that the act applies to the employees of defendant commission and to the type of work in which petitioners were engaged.

Petitioners must be deemed to be "persons holding positions" within the meaning of this section, and thus are bound by the provisions of the civil service act as to qualifying examinations. Although the six-months period for taking such examination, as prescribed in the statute, has elapsed, we do not believe that petitioners are barred from the opportunity of being examined to determine their fitness to continue to hold their jobs. The limitation was for the purpose of securing prompt action by the civil service commission and employees able to submit to the examinations, but it cannot be held to bar employees wrongfully prevented from taking the examinations by the improper action of the commission or agency employing them. These world war veterans, who occupied preferred positions under both the veterans' preference act and the civil service act, should not be precluded from competing for their jobs because of delay for which they were in no way responsible. The six-months limitation of the statute must be held directory and not mandatory.

We find no occasion for determining the extent that the veterans' preference act has been superseded by the civil service act. It is clear that section

24 of the latter statute, *supra,* does not exempt veterans from the obligation of taking qualifying examinations. If this conflicts in any way with the provisions of the veterans' preference act, the conflicting sections of the earlier statute must give way as the legislature has directed. Act No. 346, § 28, Pub. Acts 1937 (Comp. Laws Supp. 1937, § 402-28, Stat. Ann. 1938 Cum. Supp. § 3.978).

Although the civil service commission is not a party to this suit, the attorney general concedes that petitioners are entitled to take the qualifying examinations if not barred by lapse of time. Accordingly, mandamus will issue compelling respondent commission to accord petitioners full rights as employees and to restore them to their former positions, if possible; otherwise, to positions substantially similar thereto, but only on condition that they successfully complete qualifying examinations prescribed in the civil service act. If respondent refuses or neglects prompt and good faith compliance with these requirements, petitioners may take further steps to enforce their rights.

Since no provisions for the assessment of costs against the State are made where the proceedings are not brought by public officers, no costs will be allowed. Petitions for peremptory writs of mandamus are granted and writs, in accordance with this opinion, shall issue in each case.

WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.