STATE EX REL. J. H. BUTTERS v. WILBUR ELSTON AND OTHERS, AS STATE CIVIL SERVICE BOARD.[1]

January 22, 1943.

No. 33,247.

[1]Reported in 7 N. W. (2d) 750.

See 209 Minn. 530, 296 N. W. 906.

*Briggs & Briggs* and *John D. Jenswold,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *John A. Weeks* and *George B. Sjoselius,* Assistant Attorneys General, for respondents.

Julius J. Olson, Justice.

This is an appeal by J. H. Butters from an order of the district court of Ramsey county discharging a writ of *certiorari* and af-

firming "the decision and order of respondents as the State Civil Service Board * * * whereby it was declared that relator [Butters] had no status under the State Civil Service Act and denied" his application to have such status determined.

Appellant's case has been here before, although upon a different theory. State ex rel. Butters v. Railroad & Warehouse Comm. 209 Minn. 530, 296 N. W. 906, where the facts necessary to that decision are found at page 532. We there reversed the order of the district court of St. Louis county denying the motion of the commission for a new trial after findings had been made granting Butters (relator in that proceeding) the right of reinstatement to his former employment. The conclusion there reached was that (209 Minn. 534, 296 N. W. 908):

"Relator's rights under the veterans preference law are gone. He was deprived of them by the civil service law. Whether he is now entitled to a 'permanent classified civil service status' as provided by § 38 of the state civil service act is not for us to determine. To that question, this decision is without prejudice."

Some additional facts should now be stated. After the decision in the former case had been made and pursuant to the suggestion quoted above, appellant brought this proceeding, which is an application for a declaration of his status under the civil service act. L. 1939, c. 441. He avers the facts in respect to his military service in World War I; his honorable discharge as a veteran; that he was employed by the railroad and warehouse commission; that he was removed on December 31, 1938, "without charges being preferred against him, without hearing, and without opportunity given to be heard"; that in the department where he was employed other men "not honorably discharged veterans of past wars" continued to be employed and that these men "are performing the same or similar work and duties to those performed by petitioner before his said removal." Lengthy reference is made to our prior decision and to the findings made by the district court in that case. His prayer for relief is that the civil service board

cause "an investigation to be made, and hear and determine the matters presented hereby, and determine petitioner's permanent classified civil service status in accordance with the facts and his claims" as stated in his application, and that he "be given an opportunity to present" these to the board.

The board, without ordering or having any hearing upon his application, certified in its return to the district court in the instant proceeding that it had "considered the application for declaration of status submitted on behalf of J. H. Butters"; that the members of the board had discussed his request and had concluded that, as they construed the holding in the Kane case (State ex rel. Kane v. Stassen, 208 Minn. 523, 294 N. W. 647), the board was not possessed of "power to grant permanent civil service status to veterans other than those included in the sections of the act" to which they refer, namely, §§ 38 and 34(3). Lack of power to consider his application in the instant case is apparently founded upon the theory that, since the act took effect April 22, 1939, some four months subsequent to appellant's discharge, therefore he was not one of those "holding offices or employments in the classified service on the effective date of this act." L. 1939, c. 441, § 34(3), Minn. St. 1941, § 43.01, subd. 4 (Mason St. 1940 Supp. § 254-82[3]). If that theory is right Mr. Butters is left without a remedy.

As we pointed out in the Kane case, 208 Minn. 527, 294 N. W. 649:

"Relator [whose rights were the same as those of the present appellant] is not without right, however. If he was wrongfully discharged, he must show it. * * * Our only concern is relator's present position, assuming his discharge was wrongful.

"As a state employe relator did not have a vested right in his employment. Veterans, like others, could have been deprived of their positions by legislative abolition, and even if this were done after January 31, 1939, there would be no cause for relator to complain. But the fact cannot be escaped that by the civil service law the veteran's employment was expressly recognized and pre-

served by granting a permanent civil service status without a probationary period. Had relator not been discharged he would have been blanketed into the civil service on April 22, 1939, by virtue of § 254-86. By the simplest concept of justice, he is entitled to be placed in the same position as he would have been had he not been discharged improperly. Despite his lack of vested right in his employment, after January 31, 1939, he had an accrued right to contest the discharge. We find nothing in the civil service law which indicates that the preference act was to be a nullity prior to the effective date of the civil service law or that rights accrued under it were to be annihilated by the repeal."

The conclusion there reached was that (208 Minn. 528, 294 N. W. 649):

"The proper procedure is to make application to the state civil service board for a declaration of status. We do not pass upon the merits in any respect."

In their brief respondents emphasize that "The Issue" to be decided depends upon the answer to be made to their question: "Can the civil service board grant status to a person who was not in the employ of the state on April 22, 1939, the effective date of the act?" To that question, they of course think that only a negative answer is possible, pointing to § 10 of the act as authority for their answer. As to § 38, they say that this "also limits the granting of status to those who are employed on the effective date of the act." They argue that "nowhere in the act is there any provision authorizing the granting of status to any person" situated as was appellant.

What we said in the Kane case respondents have either overlooked or entirely ignored. In this situation, it may be well again to refer to that case for additional light. In addition to what has been quoted, we there distinctly referred to several sections of the act (208 Minn. 528, 294 N. W. 650) as "comprehensive grants" of power given to the director and the civil service board in matters of this kind; and the opinion significantly concludes:

"In addition, the civil service board, by the very nature of its purpose and function, has the power to determine the status of an individual claiming to be entitled to a permanent civil service status."

As we have seen, what this court was discussing in that case was Kane's "present position, assuming his discharge was wrongful." This vital question was never considered by the board in this proceeding. It washed its hands by saying that it was without authority to act. Its reason obviously is founded upon the theory that, since the employe was not on the state's payroll, therefore he was not an employe. But being on the payroll is not the decisive factor. Rather, and only, the precise question is whether he was in fact a *de jure* employe on the determinative date. His claim is that he was unlawfully discharged and for that reason his employment continued unabated and uninterrupted. He has consistently and persistently stuck to this claim. In his former case the trial court sustained him, but that result came to naught because the statute under which he there sought relief had been superseded by the civil service act. State ex rel. Butters v. Railroad & Warehouse Comm. 209 Minn. 530, 296 N. W. 906.

We think the Kane case, 208 Minn. 523, 527, 294 N. W. 647; Larsen v. City of St. Paul, 83 Minn. 473, 86 N. W. 459; and Markus v. City of Duluth, 138 Minn. 225, 164 N. W. 906, sustain appellant's contentions. Helpful, too, are O'Donnell v. Liquor Control Comm. 288 Mich. 377, 284 N. W. 915, and Sullivan v. State Bd. of Tax Adm. 290 Mich. 664, 288 N. W. 300. In State ex rel. Tracy v. Levitan, 228 Wis. 136, 139, 279 N. W. 620, 622, the holding was:

"The *status* of an accused person is that of an employee until the effective date of the discharge. While he continues in that status he may answer the charges, thus securing a hearing before he loses the economic security which is guaranteed by the civil-service law."

Respondents next suggest, as an alleged additional reason

why we should not overturn its decision, that appellant "never worked for the state as a regular or permanent employe in any capacity"; that his regular term of employment "terminated December 31, 1938," and hence that he is not in a position to complain. They say that they "considered" his present application and that this "fully set forth all of the facts regarding his employment"; that they had before them not only the facts stated in the petition but also "had available the printed record in the case tried in District Court [of St. Louis county] which contained all available evidence regarding the facts concerning his employment." Therefore, so it is claimed, "it was not necessary to take further testimony." Upon these facts and "its own investigation," their conclusion was that Mr. "Butters had no status under the civil service act." In respect to the findings made by the trial court of St. Louis county, since there was a reversal here, they say that that decision is no longer of any force; and, furthermore, they submit "that the board would be in a better position and more qualified to determine this question than the District Court." The board may be right in its assertion of being "in a better position and more qualified" than are the courts in matters of this nature. But neither this court nor the district court may escape the legal duties going with judicial office. This case is but one of many of similar types having their source in some bureau or board. As yet, in this jurisdiction at least, courts are still functioning within their granted constitutional powers.

We cannot agree that this belated additional reason for sustaining the board has any place or that it finds any support in the record. As we have already said, all that the trial court had before it was appellant's application and the board's return thereto. And that, too, is all we have. These two documents, and these alone, so the board certified, constitute "all the records of the proceedings in the above entitled matter." (See record pp. 25 to 34, inclusive.)

Our scope of review in *certiorari* proceedings is limited to and determined by the record made by the officers whose action is

sought to be reviewed. As an appellate court, we cannot make findings of fact or determine questions of fact. But appellant, as a party to this proceeding, "has a right to have considered and determined all questions properly presented by the record." 1 Dunnell, Dig. & Supp. § 1402, and cases cited under note 67.

■ We conclude that there was here a complete failure by the board to act upon appellant's application, and that its refusal to hear his claims, especially its failure to give him an opportunity to present his proof on the vital subject of his claimed wrongful discharge, cannot be ignored. Rights cannot be so thwarted.

Order reversed and cause remanded for further proceedings in harmony with the views expressed in this opinion.

So ordered.

[1]Reported in 7 N. W. (2d) 757.