*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0753**

Tony Thiel,
Relator,

vs.

Independent School District No. 803,
Respondent.

**Filed January 9, 2017
Affirmed
Smith, Tracy M., Judge**

Independent School District No. 803

Sharon L. Van Dyck, Andrew T. James, Fafinski Mark & Johnson, P.A. Eden Prairie, Minnesota (for relator)

Maggie R. Wallner, Adam C. Wattenbarger, Kennedy & Graven, Chartered, Minneapolis, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Reyes, Judge; and Smith, Tracy M., Judge.

## UNPUBLISHED OPINION

**SMITH, TRACY M.**, Judge

Relator Tony Thiel challenges a decision made by the school board of respondent Independent School District No. 803 not to renew his football and baseball coaching contracts and to terminate his employment as activities director. Thiel asserts that the school board's decision must be reversed (1) because of a procedural irregularity in the

form of a violation of the Minnesota Open Meeting Law and (2) because the school board based its decision on parent complaints in violation of Minn. Stat. § 122A.33 (2016). Because the record reflects that the school board's proceedings were procedurally regular and the school board did not base its decision solely on the existence of parent complaints, we affirm.

## FACTS

Tony Thiel is the former activities director, head baseball coach, and head football coach for Independent School District No. 803. Thiel was a coach in Wheaton for 23 years pursuant to one-year coaching contracts subject to renewal by the school board. His employment as activities director was at will and could be terminated at any time at the discretion of the school board.

The superintendent informed Thiel on December 4, 2015, that the school board did not intend to renew his coaching contracts and that he may be terminated from his activities director position. Thiel sent a letter to the superintendent on December 8 concerning the December 4 conversation. Thiel's December 8 letter alleges that the superintendent informed Thiel that his coaching contracts would not be renewed "due to parent concerns in both sports." The superintendent responded to Thiel in a December 10 letter, stating, "I did not say that parent concerns are 'the' reason that the Board is considering your non-renewal. Concerns have been expressed by others and the Board wants to move in another direction in the coaching for football and baseball."

The superintendent conveyed to the school board members the "general nature" of the complaints against Thiel prior to the board meeting. At its open meeting on

2

December 14, the school board voted not to renew Thiel's coaching contracts and approved the termination of Thiel's employment as activities director. The school board did not discuss the reasoning behind its decisions at the December 14 meeting. The school board sent two letters to Thiel on December 21 notifying him of its decisions.

Thiel's attorney sent a letter to the superintendent and school board chairperson on December 21 requesting that the school board inform Thiel of the reasons behind the school board's decisions. The superintendent responded in a letter on January 4, 2016, explaining "(a) the School Board desires to move in a new direction and coaching style; and (b) concerns about your conduct were raised by parents, other coaches and Board members." The superintendent noted that Thiel's employment as activities director was at will and the school board was not required to provide a reason for termination of that appointment. In a January 11 letter to the superintendent and chairperson of the school board, Thiel requested an opportunity to respond to the complaints against him.

The superintendent signed an affidavit, dated February 17, summarizing the complaints brought by parents, board members, and other coaches against Thiel. The affidavit also included an attached document of handwritten notes taken contemporaneously by the superintendent while receiving oral complaints regarding Thiel. The affidavit concludes by stating that the superintendent "conveyed the general nature of these complaints to school board members prior to the December 14, 2015 meeting."

Thiel and his attorney appeared before the school board at an open meeting on March 14. Thiel's attorney questioned Thiel about the complaints alleged in the February 17 affidavit. The affidavit states that Thiel made inappropriate comments toward

student athletes. Thiel's attorney asked Thiel if he once told a student, "[I] bet if you had a plate of pancakes on the plate you'd get there faster." Thiel dismissed his comments as a "running joke." Thiel denied that he told a student athlete "if he wasn't so fat he would be able to run." He claimed he has never "called an athlete fat" and has never used "this kind of negative language with any athlete."

The affidavit alleges that Thiel talked negatively about the performance of the teams he coached. Thiel admitted, "[O]ther coaches always ask me how's your team going to be and I say I hope we win two games. I'm not an arrogant coach who says we will win every game, I just don't do that." Thiel denied allegations made by a teacher that he talked with someone at a St. Paul Saints' game about how much the school's baseball team "sucks." He emphasized that he does not have a "general negative attitude" and the football team has had 17 winning seasons during his tenure as coach.

The school board unanimously voted to affirm its decision not to renew Thiel's coaching contracts.

Thiel seeks review by writ of certiorari.

## DECISION

We review a school board's quasi-judicial employment decision by writ of certiorari. *Dokmo v. Indep. Sch. Dist. No. 11, Anoka-Hennepin*, 459 N.W.2d 671, 673 (Minn. 1990). Certiorari review of school board decisions is confined to "questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to the merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of the law, or without any

4

evidence to support it." *Id.* (quoting *State ex rel. Ging v. Bd. of Educ. of Duluth*, 213 Minn. 550, 571, 7 N.W.2d 544, 556 (1942)). Certiorari "cannot be used to review decisions purely of fact or to determine the weight of evidence, nor to review decisions based upon conflicting evidence." *Id.* (quoting *Ging*, 213 Minn. at 571, 7 N.W.2d at 556).

The scope of review is limited to the record made by the school board. *State ex rel. Butters v. Elston*, 214 Minn. 205, 211-12, 7 N.W.2d 750, 753 (1943). The school board bears the burden of making a sufficient record to "prove its actions were justified." *Dokmo*, 459 N.W.2d a6 676. The school board "should state with clarity and completeness the facts and conclusions essential to its decision so that a reviewing court can determine from the record whether the facts furnish justifiable reason for its action." *Exner v. Minneapolis Pub. Schs., Special Sch. Dist. No. 1*, 849 N.W.2d 437, 442 (Minn. App. 2014). If the school board's record is insufficient, we may remand the case for additional findings or reverse for lack of substantial evidence supporting the school board's decision. *Id.* at 442. We defer to the school board's credibility assessments. *Downie v. Indep. Sch. Dist. No. 141*, 367 N.W.2d 913, 916 (Minn. App. 1985), *review denied* (Minn. July 26, 1985).

I.     **The December 14 school board meeting was procedurally regular.**

We first consider Thiel's argument that the school board's December 14 meeting was procedurally irregular because the school board violated the Minnesota Open Meeting Law by forging a consensus before the December 14 meeting. The school board argues that Thiel has presented no evidence to support his claim and that, in any event, Open Meeting Law claims are outside of our jurisdiction on certiorari review.

This court may review the regularity of the school board's proceedings on certiorari review. *Dokmo*, 459 N.W.2d at 673. Administrative proceedings are presumed procedurally regular, and the party alleging otherwise bears the burden of proof. *Buchwald v. Univ. of Minn.*, 573 N.W.2d 723, 727 (Minn. App. 1998), *review denied* (Minn. Apr. 14, 1998).

As a threshold matter, the school board argues that this court does not have subject-matter jurisdiction to consider on certiorari review Thiel's claim under the Minnesota Open Meeting Law and that this claim should be presented before a district court. A district court may hold any person who violates the Open Meeting Law personally liable in the form of a civil penalty. Minn. Stat. § 13D.06, subd. 1 (2016). A district court may not invalidate an agency action for a violation of the Open Meeting Law. *In re D & A Truck Line, Inc.*, 524 N.W.2d 1, 6 (Minn. App. 1994). Thiel counters that he is not asserting a claim under the Open Meeting Law; he is alleging a procedural irregularity, which is a legitimate issue for certiorari review. *Dokmo*, 459 N.W.2d at 673 (permitting this court to review procedural irregularities of school board decisions on certiorari review). The school board does not dispute that it follows open meeting procedures, so, to the limited extent of reviewing for procedural irregularity, we address Thiel's argument.

The Minnesota Open Meeting Law requires school board meetings to be open to the public. Minn. Stat. § 13D.01, subd. 1(b)(1) (2016). "Meetings" are "those gatherings of a quorum or more members of the governing body . . . at which members discuss, decide, or receive information as a group on issues relating to the official business of that governing body." *Moberg v. Indep. Sch. Dist. No. 281*, 336 N.W.2d 510, 518 (Minn. 1983). The

6

statute does not prevent members from sharing information in letters, telephone conversations, or discussing matters in small, private conversations. *Id.* at 518. Private discussions "become improper when designed to avoid public discussion altogether, to forge a majority in advance of public hearings on an issue, or to hide improper influences such as the personal or pecuniary interest of a public official." *Id.* at 517-18. "[S]erial meetings in groups of less than a quorum for the purposes of avoiding public hearings or fashioning agreement on an issue may also be found to be a violation of the statute depending upon the facts of the individual case." *Id.* at 518.

Thiel alleges that the school board met in private to forge a consensus prior to the December 14 meeting. The superintendent's February 17 affidavit acknowledges that the superintendent "conveyed the general nature of [the complaints against Thiel] to school board members prior to the December 14, 2015 meeting." The Minnesota Open Meeting Law does not prohibit the superintendent from providing information about the complaints against Thiel to board members in advance of the December 14 meeting. Thiel lacks any evidence that school board members met in private or attempted to forge a consensus outside of the December 14 meeting. Thiel's only argument is that no discussion occurred at the December 14 meeting and therefore discussion must have occurred outside of the open meeting. The board members, however, may have individually cast their votes without previously holding private meetings to forge a consensus. Thiel has not met his

7

burden of proving that the school board's proceedings were irregular.  *Buchwald*, 573 N.W.2d at 727.[1]

## II.    The school board did not base its decision solely on the existence of parent complaints as prohibited by Minn. Stat. § 122A.33, subd. 3.

We turn to Thiel's argument that school board's decision not to renew his coaching contracts violated Minn. Stat. § 122A.33 because the school board relied on parent complaints in making its decision.  The school board argues that the existence of parent complaints was not the *only* reason for not renewing a coaching contract.

A school board may renew a coach's contract "as the board sees fit."  Minn. Stat. § 122A.33, subd. 2.  Minn. Stat. § 122A.33, subd. 3, however, provides that "[t]he existence of parent complaints must not be the sole reason for a board not to renew a coaching contract."  Whether the school board here relied solely on parent complaints turns on interpretation of Minn. Stat. § 122A.33, subd 3.  We review questions of statutory construction de novo.  *Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009).  If the language of the statute is unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit."  Minn. Stat. § 645.16 (2016).

The statute is unambiguous, and we therefore must give effect to its plain language.  Minn. Stat. § 645.08(1) (2016).  Thiel misconstrues the statute as prohibiting a school board

---

[1] Even if Thiel could establish that the December 14 school board meeting was procedurally irregular, he would not be entitled to the remedy he seeks—invalidation of the school board's decision and restoration of his coaching contracts.  *In re D & A Truck Line, Inc.*, 524 N.W.2d at 6 (Minn. App. 1994) (concluding that invalidation of an agency action "is not the correct remedy for a violation of the Open Meeting Law").  Moreover, the school board met again in March at an open meeting at which Thiel argued his case, and the board members again voted not to renew Thiel's contracts.

from relying on parent complaints—even complaints of other coaches and board members if their children attend school in the district. The school board argues that it would be absurd if the statute estopped the school board "from taking any action because the knowledge originated from a parent." We agree with the school board's interpretation. We construe statutes "to avoid absurd results and unjust consequences." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 278 (Minn. 2000). The plain language of the statute bars the school board from basing its decision on the "existence" and not the substance of parent complaints. *Id.* A broad interpretation of "existence of parent complaints" would bar a school board from basing a nonrenewal decision on serious allegations made by parents that the coach jeopardizes the health and wellness of student athletes. Minn. Stat. § 122A.33, subd. 3, only prohibits a school board from not renewing a coaching contract based solely on "[t]he existence of parent complaints."

Sufficient evidence in the record establishes that the school board based its decision on the substance of the complaints brought by parents, other coaches, and board members. The school board bears the burden of making a sufficient record to justify its actions. *Elston*, 214 Minn. at 211-12, 7 N.W.2d at 753. We will reverse a school board decision if it is "without any evidence to support it." *Dokmo*, 459 N.W.2d at 673. The February 17 affidavit establishes that Thiel made disparaging remarks about the students and teams he coached.[2] Thiel admitted that he made some of these disparaging remarks but claims to

---

[2] Thiel argues that the superintendent's affidavit must be excluded from the record because the affidavit is dated February 17, 2016, and the school board's decision was made on December 14, 2015. In an order dated July 14, 2016, we concluded that the affidavit was properly part of the record because the school board's nonrenewal decision was not final

9

have refuted the allegations against him at the March 14 meeting. The school board may have reasonably found Thiel's testimony not credible, and we defer to the school board's credibility assessments. *Downie*, 367 N.W.2d at 916. The school board also decided "to move in a new direction and coaching style." Therefore, the school board did not base its decision not to renew Thiel's coaching contracts solely on the existence of parent complaints. Minn. Stat. § 122A.33, subd. 3.

Because sufficient evidence establishes that the school board based its decision on the substance of complaints by parents, other coaches, and board members, we reject Thiel's argument that the school board violated Minn. Stat. § 122A.33, subd. 3. *Dokmo*, 459 N.W.2d at 673.

**Affirmed.**

---

until it was reaffirmed at the March 14 meeting. Order, *Thiel v. Indep. Sch. Dist. No. 803*, A16-0753, at 1-2 (Minn. App. July 14, 2016) (citing *Christopher v. Windom Area Sch. Bd.*, 781 N.W.2d 904, 908 (Minn. App. 2010), *review denied* (Minn. June 29, 2010)).