O. H. AMDAHL, Respondent,

v.

COUNTY OF FILLMORE, Appellant.

Harold KARLI, Respondent,

v.

COUNTY OF FILLMORE, Appellant.

Clayton E. FISHBAUGHER, Respondent,

v.

COUNTY OF FILLMORE, Appellant.

Carl FANN, Respondent,

v.

COUNTY OF FILLMORE, Appellant.

Nos. 47146 to 47149.

Supreme Court of Minnesota.

Sept. 30, 1977.

Robert R. Benson, County Atty., Preston, for appellant.

Baudler, Baudler & Maus, and Lawrence E. Maus, Austin, for Amdahl & Fann.

J. F. Herrick, Lanesboro, for Karli.

Gartner, Burkhardt, Shulman & Ekstrand, and David Shulman, Preston, for Fishbaugher.

Heard before ROGOSHESKE, SCOTT, and PLUNKETT, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

In January 1976, the Fillmore County Board of Commissioners voted to raise in varying amounts the salaries of the county sheriff, auditor, treasurer, and county recorder.[1] The board also set the budgets for all offices except that of the sheriff, approval of which was still pending. Thereafter, separate statutory appeals to the district court were instituted by the officers on the grounds that their raises were arbitrary, capricious, unreasonable, and made without sufficient regard to their duties and responsibilities. With the exception of the sheriff, each of the officers also sought an increase in his office's budget. The district court ordered the county to increase the salaries and budgets in certain specified amounts. The county appealed from the judgments entered in all four cases, and they were consolidated for consideration. For reasons which follow, we affirm the decision of the trial court with respect to the sheriff's appeal but reverse as to the other officers.

During the fall of 1975, the Fillmore County commissioners reviewed the salaries of the county sheriff, county recorder, auditor, and treasurer and determined that each officer's salary should be raised in varying amounts. In determining the salary increases to be given each of these county officials, the commissioners took into account such factors as the wage rate of elected officials contrasted with appointed officials, the previous increases in each officer's salary since his reelection in 1974, and the salaries paid officers holding similar positions in the other counties of Minnesota.

The commissioners were also concerned with the fact that the county was close to its maximum levy limitation, which meant that the funds were not available to pay every county employee the salary he requested.

After the proposed salary increases were formally adopted by the commissioners on January 27, 1976, each of the above mentioned officers instituted statutory appeal proceedings in district court, claiming that his raise was inadequate.[2] With the exception of the sheriff, all of the officers also requested budget increases for their respective offices, principally for the hire of additional personnel and an increase in the salaries of existing staff. On June 10, 1976, the trial judge found generally that the salary increase for each of the county officers was unreasonable and not based on an adequate consideration of their respective responsibilities and duties. Additionally, the court found that the budgets for the offices of the county recorder, auditor, and treasurer were too low. The court then proceeded to set increased salaries for the officers and budgets for their offices.[3] All of the officers, with the exception of the sheriff, were also awarded $300 in attorneys fees, since their appeals were concerned in part with budget changes. The county has taken a direct appeal to this court from the judgments entered with respect to the above changes.

Recently we had occasion to discuss generally the role of the judiciary in reviewing decisions of one of the other branches of government:

1. The office of county recorder was formerly known as the office of register of deeds. See, Minn.St. 386.001.

2. The applicable statutes that permit county officers to seek judicial review of their salaries as set by the county board are Minn.St. 387.20, subd. 7 (sheriff); 384.151, subd. 7 (auditor); 385.373, subd. 7 (treasurer); and 386.015, subd. 7 (county recorder).

3. The following composite tables outline the salary increases and budgets determined by the commissioners and the corresponding modifications in both salaries and budgets ordered by the court:

| Officer | Original Salary | As Increased by County | As Increased by Court |
|---|---|---|---|
| Sheriff | $15,600 | $16,140 | $18,000 |
| County Recorder | 14,340 | 14,880 | 15,900 |
| Auditor | 14,760 | 15,660 | 16,800 |
| Treasurer | 14,400 | 14,940 | 15,600 |

| Office | Budget Set by County | Budget Set by Court |
|---|---|---|
| County Recorder | $21,973.60 | $24,173.60 |
| Auditor | 27,243.60 | 30,000.00 |
| Treasurer | 17,092.00 | 18,592.00 |

"Before discussing the precise standards which apply to review of administrative agency decisions as they have emerged from our prior decisions, it is appropriate to reiterate general principles which govern our courts in dealing with all such cases. The legislature may not constitutionally delegate to the judiciary duties which are essentially administrative in character. We have consistently viewed with disfavor statutes which specify trials de novo and which attempt to confer original jurisdiction on trial courts over policy matters which are the responsibility of the legislative and executive branches. The repeal of Minn.St.1974, § 115.05, subd. 7, may have stemmed from recognition of that principle. We have repeatedly called attention to the danger of eroding the barriers which guarantee the separation of powers. *Steenerson v. G. N. Ry. Co.* 69 Minn. 353, 72 N.W. 713 (1897); *State v. G. N. Ry. Co.* 130 Minn. 57, 153 N.W. 247 (1915); *State v. Duluth Mi. & I. R. Ry. Co.* 246 Minn. 383, 75 N.W.2d 398 (1956). In the *Steenerson* case, we said on reviewing a rate decision of the Railroad and Warehouse Commission:

" 'If by this the legislature intended to provide that the court should put itself in the place of the commission, try the matter de novo, and determine what are reasonable rates, without regard to the findings of the commission, such intent cannot be carried out, as a statute which so provided would be unconstitutional. The fixing of rates is a legislative or administrative act, not a judicial one.' *Steenerson v. G. N. Ry. Co.* 69 Minn. 353, 375, 72 N.W. 713, 716." *Reserve Mining Co. v. Herbst*, Minn., 256 N.W.2d 808, 824 (1977).

█ Similarly, the fixing of rates of compensation for county officers and the budgets of their offices is essentially a legislative or an administrative act, not a judicial one. Therefore, the provisions of our constitution impose constraints upon the permissible scope of judicial action regarding county salary determinations, limiting judicial review to a determination of whether the salary was set in an arbitrary or unreasonable fashion. However, certain exceptions to this general rule have been recognized when the officers involved are officers of the court:

"We * * * held [in *Rockwell v. County of Fillmore*, 47 Minn. 219, 49 N.W. 690] that, as a general proposition, fixing the compensation of a public officer involves the exercise of legislative power, which the courts are expressly 'inhibited' by the constitution (Minn. Const. art. 3, § 1) from exercising; but that the rule has no application where fixing the compensation of an officer or quasi officer of the court is involved, and that in such a case the court may be constitutionally invested by statute with power to fix the amount of compensation, even though the officer otherwise belongs to the executive department of the government." *Cahill v. Beltrami County*, 224 Minn. 564, 566, 29 N.W.2d 444, 446 (1947).

In *Cahill* we went on to state that a sheriff is a quasi-judicial officer, and that the determination of his rate of compensation by the judiciary upon de novo consideration did not offend the constitutional mandate of separation of powers.

█ Consistent with the constitutional limitations on the scope of the judicial function in reviewing the actions of county boards which have set the salaries of county officers, the legislature has provided variant schemes for judicial review of such decisions. In appeals from decisions by the county board determining the salary of the sheriff, the legislature has provided for de novo review [4] and has specifically empowered the district court to substitute its judgment for that of the county board upon a determination that the board has acted arbitrarily, capriciously, oppressively, or without sufficiently taking into account the extent of the responsibilities and duties of the office. In appeals from decisions by the county board determining the salary and

---

4. Minn.St. 387.20, subd. 7.

budget of other county officers, including respondents in the instant cases, the legislature has provided for more restrictive judicial review. The action of the county board is to be reviewed "in like manner as though reviewed by certiorari".[5] This is in accord with the constitutional precepts previously discussed. Certiorari is, by its nature, a review based solely upon the record. Review by certiorari allows the district court to review the record before it, but only to ascertain whether that record furnishes a reasonable or substantial basis for the decision. See, 3A Dunnell, Dig. (3 ed.) § 1402. The fact that these statutes allow the district court to take new or additional testimony does not conflict with this limited scope of review. An analogous provision may be found in the Administrative Procedure Act. Minn.St. 15.0424, subd. 6, provides that, in instances of alleged procedural irregularity, the court may take testimony. Similarly, we discern it to be the intention of the legislature, in allowing the district court to take new or additional testimony, to provide an opportunity for aggrieved county officers to show factors dehors the record which they believe affected the board's decision, revealing as arbitrary or capricious the board's action which might otherwise appear reasonable.

■ With this formulation of the role of the district court in mind, it is possible to delineate our role in an appeal from the district court's determinations.

"* * * Where the district court is by statute required to grant a trial de novo in appeals from lower judicial or quasi-judicial tribunals, we have applied the 'clearly erroneous' standard, since the trial court is then acting as a court of first impression." *Reserve Mining Co. v. Herbst*, Minn., 256 N.W.2d 808, 823.

■ A different standard of appellate review governs us when the district court has decided an appeal on the record.

"We * * * expressly adopt a rule which we have heretofore tacitly accept-

ed, that it is our function to make an independent examination of an administrative agency's record and decision and arrive at our own conclusions as to the propriety of that determination without according any special deference to the same review conducted by the trial court." Minn., 256 N.W.2d 808, 824.

■ One last point deserves discussion before we address the merits of these cases. The appeals to the district court were heard by that court upon affidavits and memoranda submitted by the parties pursuant to court order. This is a procedure specifically authorized by the statutes,[6] and in these cases we find that an adequate record for judicial review was formed by the submissions of the parties. We think, however, that the taking of oral testimony of both the board members and the county officers might better serve the purposes of judicial review, for in the full dialogue of direct and cross-examination, and the presentation of evidence in chief and in rebuttal, the factors pertinent to the question at issue will be more fully disclosed to the district court, with the factors specifically considered by the board more thoroughly revealed and the views and supporting facts of the county officers' challenge to the appropriateness of the board's action more pointedly presented. Additionally, the salary of county officials is a sensitive matter of great public interest. Proceedings to determine these salaries should be conducted in open court so that the public may be fully aware of the factors considered by their representatives in setting county salaries.

Necessarily, we see these narrow issues presented by these appeals:

(1) Are the findings by the district court regarding the sheriff's salary clearly erroneous?

(2) In setting the salaries of the auditor, treasurer, and county recorder, were the county board's actions arbitrary, capricious, oppressive, or in unreasonable disregard of the duties and responsibilities of the offices?

---

5. §§ 384.151, subd. 7; 385.373, subd. 7; 386.-015, subd. 7.

6. §§ 384.151, subd. 7; 385.373, subd. 7; 386.-015, subd. 7; 387.20, subd. 7.

(3) In setting the budgets of the auditor, treasurer, and county recorder, were the county board's actions arbitrary, capricious, oppressive, or in unreasonable disregard of the duties and responsibilities of the offices?

(4) Did the trial court properly award attorneys fees to the auditor, treasurer, and county recorder?

(1) *Sheriff's salary.*

The county board raised the sheriff's salary from $15,600 to $16,140; the district court found that this salary was unreasonable and was set without adequate consideration of the sheriff's duties and responsibilities. The court fixed the sheriff's salary at $18,000.

■ The county board, in setting the sheriff's salary, considered "the prevailing wage rate in the County of Fillmore for persons in similar positions employed privately." No evidence was presented as to what private occupations were considered by the board to be "similar" to that of county sheriff. The board also considered the previous years' salaries of the sheriff, and "assumed that the Sheriff felt that his salary was reasonable, for his position, at the time he filed for re-election in 1974, or else he would not have so filed." Inasmuch as Minn.St. 387.20, subd. 2, clearly contemplates an annual review of the sheriff's salary, this consideration is only marginally relevant. The board also considered the salaries of the sheriffs of the other state counties and the overall budget of Fillmore County. The sheriff's evidence showed that the county board did not specifically consider his 25 years of law enforcement experience; no consideration was given to the fact that between 1974 and 1975 the sheriff's department doubled in the number of its personnel, primarily because the county contracted to provide full law enforcement protection for the cities of Wykoff and Spring Valley, the largest city in the county. This evidence, which the county had a right to refute by responsive affidavit, stands challenged only by the board's general declaration that it was well acquainted with the office of sheriff. The sheriff also produced evidence of the salaries paid to sheriffs of the seven neighboring counties, the years of experience of those sheriffs and the number of deputies and other employees under the supervision of each sheriff, and the population and area served by each sheriff.

■ The trial court, considering all of the evidence, found that the board had acted unreasonably and had failed to adequately consider the duties and responsibilities of the sheriff. Reviewing the evidence, we do not find these findings clearly erroneous. We also conclude that the record supports the trial court's actions in setting the sheriff's salary at $18,000. See, *Vanderhyde v. County of Dodge*, Minn., 255 N.W.2d 39 (1977).

(2) *Salaries of the auditor, treasurer, and county recorder.*

Before addressing the merits of the claim of each officer, some general comments are appropriate. In each appeal, the trial court found that the board acted in an arbitrary and unreasonable manner, without giving adequate consideration to the responsibilities and duties assigned to the officers. Under the standards we have articulated herein, we will examine the action of the county board independently and arrive at our own conclusions regarding its propriety.

The trial court, having found the county board's actions to be unreasonable, determined what it felt was a reasonable salary, and judgment was entered in each appeal determining the salary of the officer.

This language is common to all three statutes governing these appeals:

"If the court shall find that the board acted in an arbitrary, capricious, oppressive or unreasonable manner it shall remand the matter to the county board for further action consistent with the court's finding." Minn.St. 384.151, subd. 7; 385.-373, subd. 7; 386.015, subd. 7.

This is in contrast to the language of the sheriff's appeal statute, which specifically authorizes the court to—

" * * * make such order to take the place of the order appealed from as is justified by the record and [to] remand the matter to the county board for further action consistent with the court's findings * * *." § 387.20, subd. 7.

The difference in statutory authority is, as revealed by our prior discussion, reflective of the different constitutional restraints on judicial review of salary determinations of quasi-judicial officers as opposed to other county officers. It was thus improper for the district court to enter an order determining the amount of the salary of each officer; the function of the district court is solely to determine whether or not the action of the board is in violation of the standards prescribed by the statutes.

Officers who take appeals to the district court have the burden of showing that the action of the county board was arbitrary, capricious, or in unreasonable disregard of their duties and responsibilities. In an effort to sustain this burden, the officers here submitted affidavits in support of their positions. While all three appealing officers presented their evidence to the district court independently, certain elements of proof were common. All three officers sought to establish that their salaries were substantially lower than those paid to officers in the same positions in neighboring counties. The county board considered this fact but felt constrained by the lower population and assessed valuation of Fillmore County to pay all county officers less than the salaries paid officials in neighboring counties. These are valid factors for the board to consider, as they are a measure of the county's ability to raise revenue through tax levies. All three officers sought to emphasize the broad scope of their duties and responsibilities as a basis for higher salaries. The board did not address the specific duties of each officer but merely averred that it had considered the duties and responsibilities of the various officials. While we would prefer a more detailed recitation of what duties and responsibilities the board ascribed to each officer, there was no factual evidence presented to support (as in the case of the sheriff) the conclusionary claims of increases in the responsibilities of any official or in the staff of any office.

The county board is entrusted generally with the management of the county, including the fiscal management. Budgetary decisions are often a matter of discretion, requiring a balancing of many factors. Under the statutes governing the instant appeals, it is not the function of the district court in the first instance, or this court on subsequent appeal, to substitute its discretion for that of the county board. Our examination of the record is limited to an inquiry as to whether the county board has acted unreasonably or arbitrarily. While we may reach a conclusion different from the county board based upon the evidence considered, we cannot substitute our judgment for that of the county board absent a determination of arbitrariness or failure to sufficiently consider the duties and responsibilities of the office in question. In the instant case, we feel that there has been no such showing. While the record might support the conclusion that the appealing officers are paid less than their counterparts in other counties, there is no evidence that the refusal to grant the requested increases represented more than the considered judgment of the Fillmore County Board. There is no showing that these three officials were arbitrarily or capriciously treated in comparison with other county employees. Nor is there any claim or suggestion that the board's action was affected by bad faith or ill will. We conclude that the district court erred in finding that the board's actions were improper.

(3) *Budgets of the offices of the auditor, treasurer, and county recorder.*

Each appealing officer requested an increase in his budget, based principally upon an assertion by each that increases in the salaries of their staff were necessary. While the county board failed in the affidavits submitted to the district court to address the issue of the budgets, the evidence submitted by the appealing officers fails to

establish that the budgets were set in an arbitrary manner. They presented no evidence showing that their budgets were such that they could not adequately perform the functions of their office or that their ability to otherwise discharge their duties was impaired. The affidavits submitted by the officers contain no facts which would support their conclusionary statements that they needed larger budgets.[7] As we stated previously, the appealing officers have the burden of proof under the statute. That burden has not been met here, and the district court erred in finding that the board's actions were improper.

### (4) Attorneys fees.

 In *Busse v. Board of County Commrs.*, Minn., 241 N.W.2d 794 (1976), we created a very narrow exception to the general rule that attorneys fees are not granted in the absence of specific statutory or contractual authorization and allowed attorneys fees to be awarded a county official who successfully prosecuted a budgetary appeal. We noted, however, that that case did not involve the official's salary but only the budget of the office. In the instant cases, the object of the appeals was to gain both a salary increase for the appealing officials and a budgetary increase for each. Despite the fact that we have refused to hold that the budgets of the various offices were set in an improper manner, we do not feel that the appeals were frivolous. In these circumstances, we feel that an award of attorneys fees is appropriate only in so far as it represents compensation for efforts by the attorneys on behalf of the officials to increase the budget. We feel that, because the award of attorneys fees by the trial court was clearly intended to cover only that portion of the litigation expenses attributable to the issue of budget increases, the award was proper. The limited award of attorneys fees is affirmed.

Affirmed in part, reversed in part, and remanded with directions to dismiss the appeals of the auditor, treasurer, and county recorder.

---

**7.** The auditor's brief stated: "The difference in salaries requested and salaries granted to Chief Deputy, Deputy, Clerk and Extra Help in the Auditor's office is set out to show a denial of $2,670.00 in budget requested needed to operate the Auditor's office efficiently." No evidence is presented indicating in what manner the efficiency of the office would be aided by an increased budget.

The county recorder showed only that his staff was paid less than staff at adjoining counties.

The treasurer's affidavit stated that "* * * the change in taxing laws has substantially and materially increased my work load, the work load for the clerks and the work load for the entire Treasurer's Office." The treasurer did recite several instances of how his work load has been increased, but only in conclusory items without specific facts.