Kristine DOKMO, Respondent,

v.

INDEPENDENT SCHOOL DISTRICT NO. 11, ANOKA–HENNEPIN, Minnesota, Appellant.

No. C2–89–190.

Supreme Court of Minnesota.

Aug. 31, 1990.

Rehearing Denied Oct. 12, 1990.

John M. Roszak, Anne F. Krisnik, Ratwick, Roszak, Bergstrom, Maloney & Bartel, P.A., Minneapolis, for appellant.

Richard A. Williams, Jr., Hvass, Weisman & King, Chartered, Minneapolis, for respondent.

Peterson, Engberg & Peterson, Minneapolis, for amicus curiae.

POPOVICH, Chief Justice.

Appellant Independent School District No. 11, Anoka–Hennepin, declined to reinstate respondent teacher Kristine Dokmo following her return from an extended leave of absence. Dokmo commenced a declaratory judgment action in district court challenging the school district's decision. After finding Dokmo had been a substitute teacher during her extended leave, the district court granted partial summary judgment to Dokmo and ordered the school district to reinstate her. The Minnesota Court of Appeals affirmed, holding a declaratory judgment action was an appropriate proceeding to challenge the school district's action. We now reverse.

## I.

Kristine Dokmo, a 13–year teacher with Independent School District No. 11, Anoka–Hennepin (school district), requested and was granted a five year extended leave of absence, beginning July 1, 1983. Extended leaves of absence may be granted on a one-time basis pursuant to Minn.Stat. § 125.60, subd. 2 (1988). During her leave of absence, Dokmo moved with her husband to LeSueur, where she eventually accepted a one-year contract as a substitute elementary art teacher with Independent School District No. 393, LeSueur, Minnesota. The contract stated that Dokmo was a long-term substitute teacher and that she waived any continuing contract rights. Because the teacher she replaced continued on leave, Dokmo remained as a long-term substitute teacher, subsequently signing three additional one-year contracts.

On January 26, 1987, Dokmo notified the Anoka–Hennepin school district that she wished to return to that district before the expiration of her extended leave. On February 2, 1987, the district informed Dokmo it would consider her request. A week later, the district notified Dokmo the expiration of her leave had been advanced and her return date was moved to July 1, 1987. The school district later discovered Dokmo had been employed with the LeSueur district during her leave of absence. On March 13, 1987, the school district told Dokmo that it would treat her employment during leave as a voluntary resignation. Dokmo responded that she had not violated the terms of her leave because she was hired as a substitute teacher. The LeSueur district indicated their intent was to hire Dokmo as a long-term substitute and sent copies of Dokmo's contracts. Anoka–Hennepin wrote Dokmo her employment as a full-time/full-year "teacher" violated the extended leave agreement. On April 16, 1987, the district sent Dokmo a letter stating on April 13, 1987 the school board had accepted her resignation effective July 1,

1987. Although Dokmo and her attorney later met with school district officials to discuss the matter, the issue was never resolved.

Dokmo commenced a declaratory judgment action in Anoka County District Court. The trial court granted partial summary judgment in her favor, declaring Dokmo had been a substitute teacher during her leave and had not taken a "full-time or part-time position as a teacher" within the meaning of Minn.Stat. § 125.60, subd. 6a (1988). The trial court found further that Dokmo had waived any continuing contract rights as a substitute teacher under Minn. Stat. § 123.35, subd. 5 (1988). The school district was then ordered to reinstate Dokmo, and appealed. After finding jurisdiction, a split court of appeals panel affirmed. *Dokmo v. Independent School Dist. No. 11, Anoka–Hennepin,* 443 N.W.2d 231 (Minn.App.1989). This court granted further review.

## II.

Review of this case was granted primarily to determine whether a petition for writ of certiorari is the exclusive means for reviewing a school board's action, regardless of whether the teacher had a right to or an opportunity for a hearing. A divided court of appeals panel held Dokmo's declaratory judgment action was a proper method for obtaining review of the school board's decision. The court of appeals panel reasoned that when a teacher is denied reinstatement from an extended leave of absence without a hearing, review by writ of certiorari becomes impractical because the record on review is underdeveloped or non-existent. However in *Strand,* a teacher termination case just like the present case, we held "it was the intention of the legislature and this court in its rulemaking capacity to vest certiorari jurisdiction for cases of this nature in the court of appeals." *Strand v. Special School Dist. No. 1,* 392 N.W.2d 881, 883 (Minn.1986). It is a rule this court has consistently applied and stressed, not only for its practical application, but as recognizing the separation between branches of government and our standard of review.

■ This court's longstanding rule and repeated holding has been that the proper and only method of appealing school board decisions on teacher related matters is by writ of certiorari. Past decisions amply illustrate this point. In 1942, this court said:

> Complete jurisdiction cannot, either directly or indirectly, be conferred upon the courts [to review school board decisions] in view of the constitutional division of the powers of government. * * * [Y]et a limited jurisdiction by way of *certiorari,* and in some cases by statutory appeal, is conferred upon the courts. This is necessarily confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of the law, or without any evidence to support it. *A court cannot put itself in the place of the board, try the matter de novo, and substitute its findings for those of the board.* * * *

> It is significant that the tenure act itself gives no right of appeal, leaving a discharged teacher *only* the right to a *review by a prerogative writ.* * * * [W]rits, such as certiorari, * * * cannot be used to review decisions purely of fact or to determine the weight of evidence, nor to review decisions based upon conflicting evidence.

*State ex rel. Ging v. Bd. of Educ. of Duluth,* 213 Minn. 550, 570–71, 7 N.W.2d 544, 556 (1942) (emphasis added; citation omitted), *overruled in part on other grounds, Foesch v. Independent School Dist. No. 646,* 300 Minn. 478, 223 N.W.2d 371 (1974). Since the *Ging* decision this court has reaffirmed the rule several times. We have stated, "Teacher dismissals have historically been afforded *only* appellate review by writ of certiorari * * *." *Grinolds v. Independent School Dist. No. 597, Erskine,* 346 N.W.2d 123, 127 (Minn.1984) (emphasis added). In *Moberg v. Independent School Dist. No. 281,* 336 N.W.2d 510, 519 (Minn.

1983), we said "a writ of certiorari is the *proper* form for challenging a school closing decision, *rather than the declaratory judgment action* brought in this case." (Emphasis added.) Finally, we recently reiterated, "The *appropriate* procedure to challenge a school board reinstatement and realignment decision hereafter is by a writ of certiorari." *Harms v. Independent School Dist. No. 300, LaCrescent,* 450 N.W.2d 571, 577 (Minn.1990) (emphasis added). The court of appeals too has followed the rule requiring use of certiorari. *See, e.g., Silver Bay Area Citizens Concerned for Quality Educ. v. Lake Superior School Dist. No. 381,* 448 N.W.2d 92, 94 (Minn.App.1989) (holding "[a] writ of certiorari is the *proper* form of action for challenging a school district's decision," while refusing to hear issues appealed by any method other than writ of certiorari) (emphasis added), *pet. for rev. denied* (Minn. Jan. 23, 1990); *Collins v. Independent School Dist. No. 745,* 416 N.W.2d 174, 177 (Minn.App.1987) ("Certiorari is the *correct* method of challenging school district actions.") (emphasis added). Although this court could not have been any clearer than stating certiorari is the "only," the "proper," and the "appropriate" method to appeal school board decisions, these decisions express far more than a preference towards one means of obtaining review.

Constitutional principles of separate governmental powers require that the judiciary refrain from a de novo review of administrative decisions. We have often refused to allow de novo review of action taken by non-judicial entities. We said:

Before discussing the precise standards which apply to review of administrative agency decisions as they have emerged from our prior decisions, it is appropriate to reiterate general principles which govern our courts in dealing with all such cases. The legislature may not constitutionally delegate to the judiciary duties which are essentially administrative in character. We have consistently viewed with disfavor statutes which specify trials de novo and which attempt to confer original jurisdiction on trial courts over policy matters which are the responsibility of the legislative and executive branches. * * * We have repeatedly called attention to the danger of eroding the barriers which guarantee the separation of powers.

*Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977). Through certiorari, constitutional guarantees are protected when a reviewing court exercises only limited jurisdiction over the decisions of school boards. Separation of powers principles dictate the continued adherence to limited review by writ of certiorari, and the standards for reviewing school board decisions properly recognize the limited judicial role. *Whaley v. Anoka–Hennepin Indep. School Dist. No. 11,* 325 N.W.2d 128, 130–31 (Minn.1982) ("This limited judicial role in the application of substantial evidence stems from the recognition that considerable judicial deference should be extended to the fact-finding processes of a school board * * *."). Since at least 1936 this court has taken a deferential approach to school board teacher discharge decisions. *See Anderson v. Consolidated School Dist. No. 144, Hennepin County,* 196 Minn. 256, 257–58, 264 N.W. 784, 785 (1936) (applying a "bad faith, arbitrary or capricious" standard to a teacher termination). This standard was refined in *Ging,* where this court created the following standard:

While a school board in the exercise of its power of removal of teacher is a quasi judicial body, it does not thereby lose its identity as an administrative body and become a court; hence the regularity of its action cannot be tested by strict legal rules prevailing in court proceedings. The right of review to determine whether its findings are based upon substantial evidence or whether they are arbitrary, oppressive, and therefore in excess of its powers satisfies the requirements of due process.

* * * neither the district court on certiorari nor this court on appeal [can] interfere with the school board in its discretion as to the existence of statutory grounds for discharge, provided the board acted in good faith and on a correct interpretation of the law.

213 Minn. at 564–65, 571–72, 7 N.W.2d at 553, 556 (citations omitted). Under the standard of review currently applicable, a school board determination will be reversed when it is fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, not within its jurisdiction, or based on an error of law. *See Foesch v. Independent School Dist. No. 646,* 300 Minn. 478, 485, 223 N.W.2d 371, 375 (1974). The school board must make specific findings supporting its decision. If the findings are insufficient, the case can be either remanded for additional findings or reversed for lacking substantial evidence supporting the decision. Our decision in *Ging* supports remand for additional findings, where we stated, "The remand is made to permit further evidence to be taken or additional findings to be made in accordance with the applicable law." 213 Minn. at 589, 7 N.W.2d at 564. *See also Roseville Educ. Ass'n v. Independent School Dist. No. 623,* 391 N.W.2d 846, 852 (Minn.1986); *State ex rel. Haak v. Board of Educ. of Indep. School Dist. No. 625, St. Paul,* 367 N.W.2d 461, 466–68 (Minn.1985), *reh'g denied* (Minn., Jul. 24, 1985); *State ex rel. Dreyer v. Board of Educ. of Indep. School Dist. No. 542, Battle Lake,* 344 N.W.2d 411, 414 (Minn.1984); *Herfindahl v. Independent School Dist. No. 126, Clara City,* 325 N.W.2d 36, 39 (Minn.1982); *Morey v. School Board of Indep. School Dist. No. 492, Austin,* 268 Minn. 110, 115–16, 128 N.W.2d 302, 306–07 (1964). School board decisions, however, have also been reversed for failing to show a substantial basis in the record or for misapplying the applicable law. *E.g., Ganyo v. Independent School Dist. No. 832,* 311 N.W.2d 497, 500–01 (Minn.1981); *Liffrig v. Independent School Dist. No. 442, Oslo,* 292 N.W.2d 726, 729–30 (Minn.1980); *Ruter v. Independent School Dist. No. 347,* 364 N.W.2d 823, 826 (Minn.App.1985), *pet. for rev. denied* (Minn. June 14, 1985).

By contrast, declaratory judgment actions invite a de novo review by the district courts. When declaratory judgment is used in place of certiorari, the district court is not bound by the school board's factual findings. Minn.Stat. § 555.09 (1988). This was the very procedure rejected as early as *Ging:*

> There are, however, some constitutional difficulties in granting to courts a trial de novo, for, as we shall point out later, the door has been closed to complete judicial review on questions of fact, the sole permissible inquiry being whether there is any evidence to sustain the findings of the administrative board.

213 Minn. at 567, 7 N.W.2d at 554. Use of declaratory judgments contravenes the standards this court has consistently applied to school board decisions. *E.g., Atwood v. Independent School Dist. No. 51, Foley,* 354 N.W.2d 9, 11 (Minn.1984) ("This court reviews a school board's decision to terminate a teacher by looking at the entire record. This matter is, however, *not heard de novo,* and *this court may not substitute its judgment for that of the school board.*") (emphasis added); *Kroll v. Independent School Dist. No. 593,* 304 N.W.2d 338, 342 (Minn.1981) (a court in a school case is not at "liberty to hear the case de novo and substitute its findings for those of the school board."). For 50 years school board decisions have been reviewed by writ of certiorari under a standard recognizing the judiciary's limited role over administrative bodies; a role that is neither enlarged or diminished by the want of a hearing.

■ The court of appeals panel focused on the necessity of a hearing to secure proper appellate review via a writ of certiorari. A hearing, however, has never been a requirement before petitioning for certiorari. *See* Minn.Stat. ch. 606 (1988). By its very nature, review by writ of certiorari is based solely on the *record* before the school district. *Amdahl v. County of Fillmore,* 258 N.W.2d 869, 874 (Minn.1977); Minn.Stat. § 606.01 (1988). A court acts in an appellate capacity by reviewing the school board's *record,* whatever that record might be, *regardless of whether a hearing was provided below.* This court recently noted that when using certiorari:

> The *record* shall include: (1) any notice of the vacancy or position to be filled and any material relating to the determination of what position is to be filled; (2) all

teacher correspondence requesting recall and realignment; (3) any realignment proposals considered; (4) reasons for adoption or rejection of each such proposal; (5) any recommendation of the school administration to the school board; and (6) any school board action taken together with reasons for the selection made. *Review of the writ of certiorari* shall be based on the *record* made before the school board * * *.

*Harms,* 450 N.W.2d at 577 (emphasis added). Whether an appellate court can adequately review a school district's decision in no way depends on whether there was a hearing. Indeed, a hearing does not, in itself, guarantee an adequate record. The existence of a hearing is an entirely different question than the existence of a record for appellate review. Minnesota appellate courts have often reviewed school board decisions by writ of certiorari where *no hearing took place,* finding nothing inadequate about the record produced. *E.g., Roseville,* 391 N.W.2d at 847–49; *Allen v. Board of Educ. of Indep. School Dist. No. 582, Jasper,* 435 N.W.2d 124, 125–26 (Minn. App.1989), *pet. for rev. denied* (Minn. Apr. 19, 1989); *Collins,* 416 N.W.2d at 176–77; *Evans v. Independent School Dist. No. 281,* 396 N.W.2d 616, 617–19 (Minn.App. 1986); *Grinolds v. Independent School Dist. No. 597,* 366 N.W.2d 667, 667–68 (Minn.App.1985).

In *Roseville,* we made clear that a writ of certiorari is the proper method for review when we dismissed the claims of eight teachers, who did not have a hearing, because their writs "did not issue until the 61st day after they had received notice of their placement on leave. Issuance of the writ within 60 days is a jurisdictional prerequisite to judicial review." *Roseville,* 391 N.W.2d at 849. In *Harms,* there was no hearing requirement for reinstatement for unrequested leave of absence, even though certiorari was the "appropriate" procedure to use. 450 N.W.2d at 577. A different rule cannot apply to reinstatement from a voluntary leave of absence.

■ While a record is essential to review by writ of certiorari, there is no statutory or other requirement that there must be a hearing in order to create an adequate record. The burden of making a record, like the burden of proof, falls on the school board. It is the *school board's obligation* to make a sufficient record to prove its actions were justified. The "record" for judicial review must be the "proceedings" and actions of the board. Minn.Stat. § 606.01. In *Grinolds,* for instance, we held a lower court could not make de novo findings of fact; instead it had to review the *action of the school board.* 346 N.W.2d at 127–28. It is the school board's decision that is reviewed by Minnesota appellate courts. As this court said in *Ging:*

> The adoption of a liberal construction to combat the evils to which the [teacher tenure] law was directed does not permit a construction so benevolent toward teachers that, by eliminating one evil, we create another: that of transferring from the school boards, the duly elected representative of the parents, taxpayers and other electors of the school district, to the teachers and the courts the management, supervision, and control of our school system vested in such boards by other statutes.

213 Minn. at 568–69, 7 N.W.2d at 555. The notion that a teacher is obligated to make a record is supported by neither precedent nor the standard of review.

■ Even if we were to hold declaratory judgment permissible, Dokmo's own complaint indicates that declaratory judgment is not appropriate here. Dokmo alleges that the district "unlawfully failed and refused" requested reinstatement and that "termination, if effective, was without cause and contrary to the provisions of Minn.Stat. § 125.12." Dokmo sought "an order of the court direct[ing the school board] to immediately reinstate [Dokmo] as a teacher." This action does not seek the redress afforded by declaratory judgment actions under Minn.Stat. §§ 555.01–.02 (1988); rather it is an attack on the school board's decision to terminate or not reinstate a teacher. It is exactly the type of decision for which the writ of certiorari has been used for so many years. Since the

school board record in this case is not extensive, it is conceivable that the district would not have met its burden of proving substantial evidence supporting its decision or the case may have been remanded for additional findings. The district's obligation to support its decision, however, only arises when the teacher has used the proper procedure for appealing the board's decisions, which is a writ of certiorari.

### III.

Besides the underlying constitutional separation of powers principles, there are very strong practical reasons for using only certiorari to review school board decisions. The use of appellate procedures other than the writ of certiorari would be costly for school districts and taxpayers. School districts need to make personnel decisions economically and expeditiously. Declaratory judgments lead to cases where, like the present appeal, significant time passes between the school board's action and the filing of the complaint. This court recently recognized the reason declaratory judgment actions are inappropriate in the school setting is because they take too long to proceed through the courts. *Harms*, 450 N.W.2d at 577 (supreme court decision two and one-half years after declaratory judgment action filed). Since neither the declaratory judgment act nor the teacher tenure statutes have separate limitations provisions, the applicable statute of limitations for teacher employment contracts would be *six years*. Minn.Stat. § 541.05, subd. 1(1) (1988). The writ of certiorari procedure, however, contains a 60–day limitations period, Minn. Stat. § 606.01 (1988), no discovery procedures, with direct appeal to the court of appeals for review of the school board's record. School districts will hesitate to dismiss or refuse to rehire a teacher if every decision is met with de novo review and a six-year period before a declaratory judgment action need be commenced. The time to process a declaratory judgment action must also be considered. The potential school district liability for damages if a declaratory judgment action is brought six years after a school board decision is ad-

mittedly considerable. Since the enactment of the writ of certiorari statute, Act of April 22, 1909, ch. 410, 1909 Minn.Gen. Laws 490, *codified at* Minn.Stat. ch. 606 (1988), review of school board decisions by writ of certiorari, with its strong underlying constitutional and practical principles, has been efficient and successful. Rescinding it now by permitting this action would be unwise.

Dokmo argues the door to review by declaratory judgment action has never been firmly shut. If our past decisions have not done so, we do so today. While this court and the court of appeals may have reviewed school cases commenced via a declaration judgment action, we have *never* held a declaratory judgment action was a proper procedure for challenging school board decisions. In *all* the declaratory judgment cases subject matter jurisdiction *was not in issue*. Our research does not reveal a single case holding declaratory judgment action an appropriate method for obtaining review of a school board decision. In fact, although subject matter jurisdiction was not in issue in *Harms*, this court recently said:

> [W]e are troubled * * * that this [declaratory judgment] case did not reach us until two and one-half years after it was filed. The appropriate procedure to challenge a school board reinstatement and realignment decision hereafter is by writ of certiorari.

450 N.W.2d at 577. Similarly, in *Moberg* we stated "a writ of certiorari is the proper form of action for challenging a school closing decision, rather than the declaratory judgment action brought in this case." 336 N.W.2d at 519. Thus, even when not in issue, this court has twice noted that the declaratory judgment action is an incorrect method for challenging school board decisions.

### IV.

■ Because incorrect procedure was used for challenging the school board's decision and a writ of certiorari was not filed within 60 days of the school board decision of April 13, 1987, the district court lacked

subject matter jurisdiction to decide the matter. We need not, therefore, reach the remaining substantive issues raised in this appeal. An action to challenge a school district's teacher reinstatement or termination decision must proceed by writ of certiorari as provided by Minn.Stat. ch. 606.

Reversed.

WAHL, Justice, dissenting.

I respectfully dissent.

This case is a termination case as the facts clearly indicate and the majority concedes (Majority op. at 673). The school district was required, therefore, to follow the procedures mandated by the continuing contract statute, Minn.Stat. § 125.12 (1988) in terminating Dokmo's employment. Since the school district failed to follow statutory termination procedures, it cannot now argue that Dokmo waived her rights by failing to seek review via writ of certiorari to the court of appeals. *Strand v. Special School Dist. No. 1*, 392 N.W.2d 881, 887 (Minn.1986) (propriety of teacher terminations pursuant to Minn.Stat. § 125.17.)[1] In effect, the school district argues dichotomous positions: on the one hand, that it did not terminate Dokmo, so it was not required to follow statutory termination procedures, and on the other hand, that it did terminate Dokmo, so she could only challenge its action by writ of certiorari. To allow the school district to have it both ways is unfair and not in accordance with law.

It is necessary to expand on the facts presented by the majority to determine the appropriateness of the relief sought in this case. The majority believes the 60–day limitations period began running on April 16, 1987, when the school district sent Dokmo a letter stating the school board had "accepted her resignation" on April 13, 1987. The school district's course of conduct, however, was arguably equivocal. The school district first asserted, in a March 13, 1987 letter, that Dokmo was ineligible for reinstatement because she had been employed as a "teacher" during

her leave. Yet it did not contact the LeSueur school district to ascertain whether Dokmo had been employed as a "teacher," "substitute teacher," or in any capacity, until March 25, 1987, the same day it informed Dokmo she had been employed as a "teacher." Moreover, even before obtaining information on Dokmo's employment status in LeSueur, the district's personnel department signed Dokmo's "Resignation Form" on March 17, 1987.

Dokmo and the school district continued to discuss Dokmo's tenure after the April 16 letter. On July 18, 1987, Dokmo wrote the school district, requesting time to obtain new counsel before meeting with district representatives. Some time in early August 1987, Dokmo and her new attorney met with school district representatives. According to Dokmo, "There was no decision of any kind made at the meeting, however, information was exchanged." Shortly thereafter, on August 15, 1987, Dokmo received a standard "welcome back" letter from the district for the 1987–88 school year. When Dokmo called the district, it informed her the letter had been sent out in error. Under these facts, a strong argument can be made that even were there a 60–day limitations period, it did not begin running on April 13 or 16, 1987.

Our cases do, indeed, make clear that the preferred and usual method of review of school board actions is by writ of certiorari to the court of appeals. This case illustrates, however, that the school district, in actuality, controls whether certiorari is the proper remedy in any given situation. Where, as here, the school district fails to provide a vehicle by which a proper remedy may be pursued, the school district is estopped to complain about the remedy chosen by the teacher. Although the majority articulates legitimate concerns for the expeditious review of school board decisions, it fails to acknowledge the school board's own failure to comply with the law.

---

1. In *Strand* the school district followed the notice and hearing requirements of the Teacher Tenure Act. 392 N.W.2d 881, C4–84–1466, App. Brief at 1 and 5.

The majority states that "[t]his court's longstanding rule and repeated holding has been the proper and only method of appealing school board decisions on teacher related matters is by writ of certiorari." (Majority op. at 673). In fact, this court has for many years reviewed actions brought by teachers in the form of declaratory judgments. *See, e.g., Sherek v. Independent School Dist. No. 699, Gilbert, Minnesota,* 449 N.W.2d 434 (Minn.1990) (Brief for Appellant at A–11, C8–88–1284); *Berland v. Special School Dist. No. 1, Minneapolis,* 314 N.W.2d 809 (Minn.1982); *Downing v. Independent School Dist. No. 9, Itasca County,* 207 Minn. 292, 291 N.W. 613 (1940). The issue of the appropriate method of review of school board actions was not before this court in *Harms v. Independent School Dist. No. 300, La-Crescent,* 450 N.W.2d 571, 577 (Minn.1990). The issue was neither raised nor argued by the parties and any comments by this court were dicta.

The issue involved in the case before us presents a question of law, not a question of fact, and was framed as such by Dokmo in her complaint. Dokmo prayed the court "For a declaratory judgment * * * that plaintiff is a *substitute teacher* within the meaning of Minn.Stat. § 125.60, subd. 6a." (Emphasis supplied.) The term "substitute teacher" is not defined in Chapter 123 or 125 and its meaning is crucial to whether or not Dokmo was entitled to reinstatement under Minn.Stat. § 125.60, subds. 3 & 6a. Minn.Stat. § 555.01 (1988) states, "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." The purpose of a declaratory judgment action is remedial and should be liberally construed and administered. Minn.Stat. § 555.12 (1988). "[A] declaratory judgment action is an appropriate method for obtaining a judicial interpretation of statutes." *In the Matter of the Welfare of K.S.,* 427 N.W.2d 653, 657–58 (Minn.1988). Dokmo asked the district court to determine whether she had been a substitute teacher within the meaning of the statute. This is precisely the type of issue that was before the court in *Welfare of K.S. See* 427 N.W.2d at 658. Furthermore, this court has previously reviewed a declaratory judgment action brought by a teacher to determine her status and rights under her contract with the school district after she was terminated. *See, e.g., Downing v. Independent School Dist. No. 9,* 207 Minn. 292, 291 N.W. 613 (1940). I would hold, therefore, that Dokmo correctly proceeded by bringing a declaratory judgment action in district court and would affirm the court of appeals.

The majority, because of its holding that the district court lacked subject matter jurisdiction, did not reach the issue of whether Dokmo is entitled to reinstatement pursuant to Minn.Stat. § 125.60, subd. 3. I would reach that issue and hold that Dokmo is entitled to reinstatement.

Minnesota Statutes §§ 125.60, subdivision 6a, and 123.35, subdivision 5, must be read together to determine whether Dokmo is entitled to reinstatement after her return from the extended leave of absence. Section 125.60, subdivision 6a, creates an exception for substitute teachers, and section 123.35, subdivision 5, recognizes that an individual may be employed as a substitute teacher for longer than one year: Section 126.60, subdivision 6a, provides:

> No school board shall be obligated to reinstate a teacher who takes a full-time or part-time position as a teacher in another Minnesota school district while on an extended leave of absence pursuant to this section. This subdivision shall not apply to a teacher who is employed as a substitute teacher.

Minn.Stat. § 123.35, subd. 5, states in part, "The board shall not hire a substitute teacher except: (a) For a duration of time of less than one school year to replace a regular teacher who is absent; or (b) For a duration of time equal to or greater than one school year to replace a regular teacher on a leave of absence."

Dokmo replaced a teacher on a leave of absence for a duration of time equal to or greater than one school year. Each year for four years, Dokmo signed a one year contract from which the "duration" provi-

sions had been deleted. In addition, the contracts she executed in 1985 and 1986 inserted provisions indicating Dokmo was contracting to serve "as a substitute teacher * * * in a vacancy occurring as a result of an extended maternity leave." Under these provisions, Dokmo was employed as a substitute teacher and would be entitled to reinstatement pursuant to Minn.Stat. § 125.60.

Before reaching this conclusion, however, it is necessary to resolve the issue of whether a teacher may voluntarily waive continuing contract rights under Minn.Stat. §§ 123.35 and 125.12 in order to preserve a reinstatement right under section 125.60. The school district contends Dokmo could not be considered a substitute teacher after her first year in LeSueur because Minn. Stat. § 123.35, subd. 5 (1988), operated to automatically convert her to "teacher" status.

The predominant purpose of teacher tenure law is to provide "stability, certainty, and permanency of employment on the part of those who [have] shown by educational attainment and probationary trial their fitness for the teaching profession." *Minneapolis Fed'n of Teachers, Local 59 v. Minneapolis Special School Dist. No. 1*, 270 N.W.2d 773, 776 (Minn.1978) (citation and emphasis omitted). In light of this legislative policy, the waiver of continuing contract rights should be exercised only with caution and due care. The use of substitute teaching contracts may not be abused to coerce teachers to disclaim the right of tenure long guaranteed by statute. *Perry v. Independent School Dist. No. 696*, 297 Minn. 197, 201, 210 N.W.2d 283, 286 (1973). If there is no abuse, and I find none in this case, waiver may be validly exercised.

To be valid, "Contractual waiver of *statutory* tenure rights must be knowing and voluntary * * * and will not be upheld where the teacher had no choice in contract terms." *Rochester Educ. Ass'n v. Independent School Dist. No. 535*, 271 N.W.2d 311, 315 n. 6 (Minn.1978); *See also State ex rel. Johnson v. Independent School Dist. No. 810, Wabasha County*, 260 Minn. 237, 246, 109 N.W.2d 596, 602 (1961). Under the facts of this case, I would uphold respondent's waiver of her rights under Minn.Stat. §§ 123.35 and 125.12 as clear and voluntary. Dokmo knew she would be replacing a teacher who would be returning for the next school year. Dokmo also knew that she had continuing contract rights in Anoka–Hennepin when waiving eligibility for those rights in LeSueur.

I would therefore affirm the court of appeals and hold that respondent is entitled to reinstatement pursuant to Minn.Stat. § 125.60, subd. 3.

YETKA, Justice.

While certiorari may be the preferred method of reviewing a case of this type, the case on the merits is here and we should decide it. Therefore, I join in the dissent of Justice WAHL.

KEITH, Justice.

I concur in the dissent of Justice WAHL.