Kaye ZUEHLKE, et al., Relators,

v.

INDEPENDENT SCHOOL DISTRICT NO. 316, Greenway–Coleraine, Minnesota, American Federation of State, County, and Municipal Employees, Council 65, Respondents.

No. C0–95–1007.

Court of Appeals of Minnesota.

Oct. 17, 1995.

Richard L. Kaspari, Garber & Metcalf, P.A., St. Louis Park, for Zuehlke.

Leif A. Nelson, Lano, Nelson, O'Toole & Bengston, Ltd., Grand Rapids, for Independent School Dist. No. 316.

Gregg M. Corwin, Karin E. Peterson, Gregg M. Corwin & Associates, St. Louis Park, for American Federation of State, County, and Mun. Employees, Council 65.

Considered and decided by KLAPHAKE, P.J., and PARKER and THOREEN*, JJ.

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-    pointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

THOREEN, Judge.

By writ of certiorari, relators, nonlicensed education support employees who worked for a cooperative school district at the time of the cooperative's dissolution, challenge a member school district's actions. They contend that the school district's posting procedures prevented them from applying for jobs created as a result of the cooperative's dissolution. Because Minn.Stat. § 122.895, subd. 8 (1994) allows them to bid for positions created as a result of the dissolution of a cooperative in the order of their seniority within the dissolved cooperative, they contend that the posting process violated their rights. We agree, and reverse and remand.

## FACTS

Despite the scant record, we can decide the issues based on the facts that appear to be undisputed.[1]

Relators are nonlicensed education support employees who were employed by the Northeastern Education District (NEED) until its dissolution on June 30, 1995. NEED was a cooperative school district providing special education services to six member school districts. Independent School District No. 316 (district 316) was one of the members of NEED. On March 15, 1995, anticipating NEED's dissolution, the district 316 board of education passed two companion resolutions on the posting of nonlicensed positions for the 1995–96 school year.

Under its collective bargaining agreement with the American Federation of State, County, and Municipal Employees, Council 65 (AFSCME), district 316 allowed only AFSCME members to bid on four positions that relators claim were created as a result of the dissolution. Furthermore, NEED employees were not permitted to bid on any available positions unless they were currently assigned to and working in district 316 facilities during the 1994–95 school year.

On May 10, 1995, pursuant to Minn.Stat. §§ 606.01–.06 (1994), relators petitioned this court for a certiorari review of the district's actions of March 1995. On motion, this court allowed AFSCME to intervene as a respondent. The school district did not file a brief or appear at oral argument before this court; instead, it expressly adopted respondent AFSCME's brief and argument.

## ISSUES

1. Is a writ of certiorari the proper method to decide this school-related matter?

2. Which version of Minn.Stat. § 122.895 applies to this case?

3. Did the school district correctly apply the law?

4. Is the statute constitutional as applied to this case?

## ANALYSIS

1. Before we reach the merits of the case, we must decide whether we have subject matter jurisdiction. Respondents argue that this case is not properly before this court for two reasons: (1) relators' case is moot because all but one of the named relators have now been assigned to nonlicensed positions in the member districts; and (2) a declaratory judgment in district court is the proper vehicle to present a case that involves the interpretation of a statute.

■ With respect to the first issue, we accept relators' claim that they have not been assigned to any of NEED's six member school districts. Even though the soon-to-be-dissolved NEED conducted postings on May 16, 1995, as its internal procedures required, none of the member school districts (including district 316) has indicated that it

---

1. "It is the *school board's obligation* to make a sufficient record to prove its actions were justified." *Dokmo v. Independent Sch. Dist. No. 11,* 459 N.W.2d 671, 676 (Minn.1990) (emphasis added). In this case, the school board did not provide this court with a record of any factual findings, despite an order directing it to do so.

Although a reviewing court must generally confine its consideration to the record upon which the decision was based, an uncontroverted statement in either party's brief or argument may be taken as true. *Loth v. Loth,* 227 Minn. 387, 399, 35 N.W.2d 542, 550 (1949).

will honor those assignments. The case is not moot.

■ With respect to the jurisdiction issue, "the proper and only method of appealing school board decisions on teacher related matters is by writ of certiorari." *Dokmo v. Independent Sch. Dist. No. 11*, 459 N.W.2d 671, 673 (Minn.1990). The supreme court has advanced several reasons for mandating certiorari review of the administrative decisions of executive bodies. Primary among them is the principle of maintaining the fundamental separation of powers. *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn. 1992). District courts should not exercise jurisdiction over matters that intrude into the policy decisions of the legislative and executive branches. *Dokmo*, 459 N.W.2d at 674.

■ In addition, strong practical reasons also dictate certiorari review: school districts need to make personnel decisions expeditiously and economically. *Id.* at 677. Certiorari review, with its 60–day limitations period and no delays caused by discovery, limits the potential liability of a school district that might otherwise face considerable damages should a lengthy declaratory judgment action be commenced. *Id.* Furthermore, the court reviewing a decision by certiorari may inquire into the merits of the controversy to determine, inter alia, whether the decision was made under an erroneous theory of law. *Dietz*, 487 N.W.2d at 239. Because the present case involves the sort of teacher-related matter about which the supreme court has special concern and because it involves misinterpretation of a statute, the matter is properly before this court on certiorari.

### Standard of Review

■ A school board decision will be reversed when it is "fraudulent, arbitrary, unreasonable, unsupported by substantial evi-

dence, not within its jurisdiction, or based on an error of law." *Dokmo*, 459 N.W.2d at 675. Reversal is warranted when a school board has either failed to show a substantial basis in the record or has misapplied the applicable law. *Id.*

To determine relators' rights and the liabilities of district 316, this court must decide which version of Minn.Stat. § 122.895, subd. 8, applies, construe the language of the statute, and determine whether district 316 applied the law correctly.

■ 2. The Omnibus Education Act of 1995 amended Minn.Stat. § 122.895, subd. 8 (1994).[2] The 1995 version makes only one change to the statute that is relevant to this case. It extends from 12 to 36 months the period during which member districts of a dissolved cooperative must provide reemployment rights to nonlicensed personnel, including education support employees. 1995 Minn. Laws 1st Spec. Sess. ch. 3, art. 6, § 4. The 1995 version became effective on June 9, 1995. 1995 Minn. Laws 1st Spec. Sess. ch. 3, art. 6, § 19.

Relators contend that the 1995 version governs the rights and duties of the parties because NEED did not dissolve until June 30, 1995. They argue that the school board's actions on March 15, 1995, did not create nonlicensed positions until after July 1, 1995, because the resolutions ordered the posting of positions for the 1995–96 school year. We disagree.

The general rule is that an unrealized right has "vested" when it has

arisen upon a contract, or transaction in the nature of a contract, authorized by statute and liabilities under that right have been so far determined that nothing remains to be done by the party asserting it * * *.

*Yaeger v. Delano Granite Works*, 250 Minn. 303, 307, 84 N.W.2d 363, 366 (1957). When a

---

2. The statute in effect on March 15, 1995, when the school board passed its resolutions, provided:

   **Nonlicensed employees upon dissolution.** A nonlicensed employee who is terminated by a cooperative that dissolves shall be appointed by a district that is a member of the dissolved cooperative to a position that *is created within 12 months* of the dissolution of the cooperative

and is created *as a result of the dissolution of the cooperative.* A position shall be offered to a nonlicensed employee, who fulfills the qualifications for that position, in order of the employee's seniority within the dissolved cooperative.

Minn.Stat. § 122.895, subd. 8 (1994) (emphasis added).

liability has been fixed under a statute, the party's

vested right in such [a] determined liability may not be destroyed by legislation which imposes a new obligation or an additional liability.

*Id.* at 308, 84 N.W.2d at 366.

Under this standard, the school board resolutions fixed the district's liability on March 15, 1995. Nothing remained for the school board or NEED to do. Because the March 15 resolutions triggered relators' incipient rights and fixed the school district's liabilities, the 1995 version of Minn.Stat. § 122.895 did not impose an additional obligation to provide reemployment rights for 36 months.

■ 3. AFSCME contends that the language of Minn.Stat. § 122.895, subd. 8, concerning an employee "terminated by a cooperative that dissolves," establishes two conditions that must be met: (1) the cooperative must have dissolved; and (2) the employee must have been terminated. Because NEED continued to exist until June 30, 1995, and because NEED's dissolution could not have resulted in any termination before that date, AFSCME argues that the statute did not govern the school board action in March. We disagree.

■ Rules of statutory construction require that the court construe statutory language to avoid reaching an unreasonable or absurd result. Minn.Stat. § 645.17 (1994); *Spaeth v. City of Plymouth*, 344 N.W.2d 815, 822 (Minn.1984). The construction urged by AFSCME is contrary to the basic philosophy of the statute and permits an unreasonable result. Although the literal language of the statute can be read to support AFSCME's contention that by posting for jobs three months before the actual dissolution, the jobs were not "created" within 12 months of the dissolution, this construction violates the ordinary meaning of the word "created."

To adopt AFSCME's construction would allow any school district member of a dissolving cooperative to avoid its obligations under the law merely by anticipating which nonlicensed positions would result from the dissolution and allocating these positions to other employees before the effective date of the dissolution. Such a result flies in the face of the legislative purpose of the statute. The positions created as a result of NEED's dissolution were created when posted in March 1995.

Furthermore, nothing in the statute suggests that only those employees of a cooperative district who were working in the facilities of a member school district at the time of dissolution may bid for positions within that member district. Such an arbitrarily imposed limitation cannot be read into the statute. We hold that any former cooperative employee may bid on positions created in any member school district as a result of the dissolution of the cooperative.

■ AFSCME contends that four positions (designated "B13," "B14," "B23," and "B53") were reserved only for AFSCME members because they were not created as a result of the dissolution and came into existence for independent reasons. We hold that B13 and B14 were positions created as a result of the dissolution and should be open to all qualified former NEED employees. We remand for further findings with respect to B23 and B53.

Positions are created as a result of a dissolution if, but for the dissolution, the cooperative school district would have staffed the position. It is undisputed that positions similar to B13 and B14 have been held by employees of the cooperative school district, and those positions were created as a result of the dissolution. The decision to limit application to AFSCME members is unsupported by record evidence. Former NEED employees who are qualified for the positions may bid on B13 and B14.

■ The record is insufficient on the creation of B23 and B53. "[A] record is essential to review by writ of certiorari," and the burden is on the school district to make an adequate record justifying its decision. *Dokmo*, 459 N.W.2d at 676.

If the findings are insufficient, the case can be either remanded for additional findings or reversed for lacking substantial evidence supporting the decision.

*Id.* at 675. We remand for the district to determine on the record whether these positions were created as a result of the dissolution. This opinion shall be considered in making that determination.

■ 4. AFSCME contends that if Minn. Stat. § 122.895, subd. 8, governs relators' rights in this case, its application violates the Contract Clause of the United States Constitution and unconstitutionally impairs AFSCME's collective bargaining agreement with the district. We find no merit to this claim.

■ The Contract Clause prohibits any state law from impairing the obligation of contracts. U.S. Const. art. I, § 10, cl. 1. However, this prohibition applies only when the state takes an action that is specifically directed at contractual obligations. *Exxon Corp. v. Eagerton*, 462 U.S. 176, 191, 103 S.Ct. 2296, 2306, 76 L.Ed.2d 497 (1983). If a state imposes a "generally applicable rule of conduct designed to advance 'a broad societal interest'" and that rule has only an incidental effect of impairing contractual obligations, the Contract Clause does not apply. *Id.* at 191–92, 103 S.Ct. at 2306. Nevertheless, courts should closely scrutinize state statutes affecting public contracts to make certain that a state is not attempting to escape from its own financial obligations. *United States Trust Co. v. New Jersey*, 431 U.S. 1, 29, 97 S.Ct. 1505, 1521, 52 L.Ed.2d 92 (1977).

By enacting Minn.Stat. § 122.895, the Minnesota legislature was neither taking direct aim at any specific contractual obligations nor trying to avoid its own financial obligations. The statute imposes a generally applicable rule of conduct. Although the statute affects a public contract between AFSCME and the district, it preserves seniority rights and serves the interests of public education in general, thereby advancing a broad societal interest. It is but an incidental effect of the statute that nonlicensed personnel currently employed by district 316 might lose some of the seniority they presently enjoy if relators' seniority is interfaced with theirs. Positions created as a result of the dissolution must be allocated to qualified employees of the cooperative school district according to seniority within the co-operative and not according to the seniority lists established under the collective bargaining agreement between AFSCME and one member district.

## DECISION

Independent School District No. 316 misinterpreted Minn.Stat. § 122.895, subd. 8, and improperly prevented relators from applying for positions created as a result of the dissolution of NEED, a cooperative school district. We remand for development of a record on the creation of the disputed positions, B23 and B53.

**Reversed and remanded.**