# STATE EX REL. S. L. JOHNSON v. INDEPENDENT SCHOOL DISTRICT NO. 810 AND OTHERS.

109 N. W. (2d) 596.

June 2, 1961—No. 38,425.

238

*Burkhardt & Dunlap,* for relator.
*Gislason, Reim, Alsop & Dosland,* for respondent school district.
*Sanborn, Jackson & Rice* and *William E. Holcomb,* for Minnesota Education Association, amicus curiae.

NELSON, JUSTICE.

A writ of prohibition was issued upon the relation of the superintendent of schools of Independent School District No. 810, Plainview, Wabasha County, to prohibit said school district and its board members from proceeding with a public hearing to terminate relator's employment on the ground that relator cannot be represented at said hearing by his attorney by reason of his attorney's being presently a member of the state legislature, now in special session.

Minn. St. 125.12, subd. 3, provides:

"Contracts governing the first and second years of a beginning teacher's first teaching experience in Minnesota are not subject to this subdivision. Thereafter, the teacher's contract shall remain in full force and effect, except as modified by mutual consent of the board and the teacher, until terminated by a majority roll call vote of the full membership of the board, or by the written resignation of the teacher, before April 1. Provided: before a teacher's contract is terminated by the board, the board shall notify the teacher in writing and state its reason for the proposed termination. Within ten days after receipt of this notification the teacher may make a written request for a hearing before the board and it shall be granted before final action is taken. Such termination shall take effect at the close of the school year in which the contract is terminated in the manner aforesaid. Such contract may be terminated at any time by mutual consent of the board and the teacher and this section shall not affect the powers of a board to discharge or demote a teacher under and pursuant to other provisions of law."

Minn. St. 3.16 provides:

"No member or officer of, or any attorney employed by, the legislature shall be compelled to attend as a witness in any court of this state during the session of the legislature, or while attending meetings of any legislative committee or commission when the legislature is not in session unless the court in which the action is pending, upon sufficient showing, shall otherwise order with the consent of the presiding officer of the body of which such witness is an employee or the consent of the body of which such witness is a member. No cause or proceeding, civil or criminal, in court or before any commission or officer or referee thereof or motion or hearing therein, in which a member or officer of, or any attorney employed by, the legislature is a party, attorney, or witness shall be tried or heard during the session of the legislature or while any member, officer of, or attorney employed by the legislature is attending meetings of any legislative committee or commission when the legislature is not in session but shall be continued until the legislature or the committee or commission meeting shall have adjourned. The member or officer of, or any attorney employed

by, the legislature may, with the consent of the body of the legislature of which he is a member or officer, or employed by, waive this privilege and in this case the cause or proceeding, motion, or hearing may be tried or heard at such time as will not conflict with legislative duties."

The relator has a continuing contract as superintendent of schools with District No. 810 under the provisions of § 125.12. The board of education of said district, by resolution passed March 1, 1961, proposes to terminate his contract as of July 31, 1961. On March 4, relator, pursuant to provisions of § 125.12, requested a hearing before the board.

At some time prior to the passage of the aforesaid resolution, relator employed Robert R. Dunlap as his attorney to represent him at the hearing. Robert R. Dunlap is a senator from the Third Legislative District of the State of Minnesota and as such has attended the regular session and is now attending the extraordinary session of the Sixty-second Session of the Minnesota State Legislature. The Sixty-second Session adjourned sine die on April 15, 1961, and was called into extraordinary session by Governor Elmer L. Andersen to convene Monday, April 24, 1961.

Under § 125.12, April 1 is the date before which a teacher's continuing contract must be terminated by a majority roll call of the full membership of the board to be effective at the close of the school year. On March 13, 1961, at a meeting of the board called for the purpose of setting the date for hearing in this matter, the relator, through his attorney, requested that the hearing be held at the close of the legislative session, offering to waive any rights he might have pursuant to the statute requiring the termination to be made by April 1. The school board rejected this offer, and set the hearing date for March 17.

On March 15, 1961, the relator obtained a temporary restraining order from Judge Leo F. Murphy of the District Court of the Third Judicial District enjoining the school board from commencing, continuing, holding, or in any way carrying on any proceedings in connection with the termination of the relator's contract, and further ordering said board to show cause, if any, on March 23 why a temporary

injunction should not issue restraining the school board from holding its hearing prior to the close of the Sixty-second Legislative Session or any extraordinary session which might follow the close thereof. On March 16, an order amending its original order was made by the district court allowing the board to meet on March 17 for the sole purpose of continuing the hearing to another date and advancing the date of hearing on the application for temporary injunction to March 20. On March 21, the district court denied relator's motion for temporary injunction and dissolved the restraining order previously issued.

The board of the school district then notified relator of its intention to commence the hearing on the termination of his contract on March 23, 1961.

On March 22, 1961, this court, on the petition of the relator, issued its writ of prohibition directing that the school district and members of its board desist and refrain from commencing, conducting, or holding a public hearing in connection with the termination of the contract of employment with relator until the further order of this court; that any further proceeding in connection with such proposed termination be stayed until the further order of this court; and that respondents show cause before this court why they should not be restrained absolutely from any further proceedings in such proposed termination until the close of the Sixty-second Session of the Minnesota Legislature or any extraordinary session which might follow the close of its regular session.

■ The essential requisites for the issuance of a writ of prohibition by this court are adequately covered in 15 Dunnell, Dig. (3 ed.) §§ 7839 to 7848a, and cases cited therein.

The writ issued out of this court in the instant case is an extraordinary writ, the purpose of which is to keep inferior tribunals from exceeding their jurisdiction. While it issues in the discretion of this court, we have often said that it ought only to issue in extreme cases where the law provides no other adequate remedy and should therefore be used with great caution. To justify the issuance of the writ three things are necessary: (1) The inferior tribunal must be about to exercise judicial or quasi-judicial power; (2) the exercise of such power must

be unauthorized by law; (3) the exercise of such power must result in injury for which there is no adequate remedy.[1]

It is apparent from an examination of the files and proceedings herein and the return of the school board to the alternative writ of prohibition, as well as the brief filed in behalf of the board, that the board intends to carry on the hearing on the proposed termination of relator's contract as it is required to do by the provisions of Minn. St. 125.12, subd. 3, but that they also intend to carry on this hearing prior to the adjournment of the current extraordinary session of the Minnesota State Legislature.

■ It is contended on behalf of the school board that its present proceedings for the proposed termination of relator's contract are not proceedings "in court," nor is a board a "court" for purposes of § 3.16.

The question here is whether the necessity of complying with quasi-judicial requirements and statutory procedures when undertaking to act in a quasi-judicial capacity brings a school board within the purposes of § 3.16 and subject to its provisions. The board appears to rely on a statement in State ex rel. Ging v. Board of Education, 213 Minn. 550, 564, 7 N. W. (2d) 544, 553, involving the Teacher Tenure Act for cities of the first class, wherein this court said:

"While a school board in the exercise of its power of removal of teachers is a quasi judicial body, it does not thereby lose its identity as an administrative body and become a court; hence the regularity of its action cannot be tested by strict legal rules prevailing in court proceedings."

There is nothing in this court's statement in the Ging case which pertains to the provisions of Minn. St. 3.16 or the purposes for which that statute was enacted. This court pointed out in Frisk v. Board of Education, 246 Minn. 366, 381, 75 N. W. (2d) 504, 514, that:

"* * * A duly constituted school board established by special law * * * is a part of the executive department, but when such board

---

[1]See, Nemo v. Local Joint Executive Board, 227 Minn. 263, 35 N. W. (2d) 337, 811; State ex rel. Ryan v. Cahill, 253 Minn. 131, 91 N. W. (2d) 144.

operates one of our several public school systems under the general powers given to it, it exercises more than merely administrative functions for it has certain powers of a legislative character and other powers of a quasi-judicial character such as passing upon discharge or demotion and such hearings as it may conduct * * *."

Section 3.16 is not limited merely to a civil or a criminal court. The conjunction "or" appearing between the words "court" and "before" in the statute makes the phrase "before any commission" a completely independent one from the phrase "in court." Clearly, it does not refer to a commission of a court. Courts do not function as commissions.

Black, Law Dictionary (4 ed.) p. 339, defines "commission" as follows:

"A warrant or authority or letters patent, issuing from the government, or one of its departments, or a court, empowering a person or persons named to do certain acts, or to exercise jurisdiction, or to perform the duties and exercise the authority of an office, * * *. Bledsoe v. Colgan, 138 Cal. 34, 70 P. 924.

\* \* \* \* \*

"In a derivative sense, a body of persons to whom a commission is directed. A board or committee officially appointed and empowered to perform certain acts or exercise certain jurisdiction of a public nature or relation; as a 'commission of assise.' "

A "board" when applied to a representative body is defined in Black, Law Dictionary (4 ed.) p. 219, as follows:

"An official or representative body organized to perform a trust or to execute official or representative functions or having the management of a public office or department exercising administrative or governmental functions. Commissioners of State Ins. Fund v. Dinowitz, 39 N. Y. S. (2d) 34, 38, 179 Misc. 278.

"A committee of persons organized under authority of law in order to exercise certain authorities, have oversight or control of certain matters, or discharge certain functions of a magisterial, representative, or fiduciary character. Thus, 'board of aldermen,' 'board of health,' 'board of directors,' 'board of works.' "

See Commrs. of State Ins. Fund v. Dinowitz, 179 Misc. 278, 281, 39 N. Y. S. (2d) 34, 38, wherein the court stated:

"That the plaintiffs are not designated by the title 'Board' is of no moment; the title is of no consequence if it is, in fact, such an institution. It is the actual fact that controls, and regardless of *descriptio personae* the plaintiffs function as a board with respect to the State Insurance Fund. A 'board' is an official or representative body organized to perform a trust or to execute official or representative functions, or which has the management of a public office or department exercising administrative or governmental functions."

The action in the Dinowitz case was brought by the plaintiffs as "Commissioners of the State Insurance Fund." It was made clear that while said commissioners were not designated by the title "Board," this did not deprive them of the preference granted under the Rules of Civil Practice to the state or board thereof in an action or special proceeding since it was the actual fact that controlled and the commissioners did function as a board with respect to the state insurance fund. The justice writing the opinion said (179 Misc. 281, 39 N. Y. S. [2d] 38):

"I regard the contention that plaintiffs are not a board, as intended or contemplated by the rule, as an unstable one. The language of the rule is clear and unambiguous. If the suit is brought by a State officer or State board, in official capacity, the preference is absolute."

■ The state legislature in Minn. St. 15.0411 to 15.0422 recognizes that boards and commissions are synonymous terms. Section 15.0411, subd. 2, provides in part:

" 'Agency' means any state officer, *board, commission,* bureau, division, department, or tribunal, other than a court, having a state-wide jurisdiction and authorized by law to make rules or to adjudicate contested cases." (Italics supplied.)[2]

---

[2] See "board" as an official or representative body, 11 C. J. S., p. 369; see "commission" in the sense of an authority—derivatively, 15 C. J. S., pp. 579, 580.

Minn. St. 645.08(1) has the following to say with reference to the construction of statutes:

"Words and phrases are construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a special meaning, or are defined in this chapter, are construed according to such special meaning or their definition."

■ "Proceeding" includes actions and special proceedings before judicial tribunals as well as proceedings pending before quasi-judicial officers and boards. See, Matter of Queens-Nassau Transit Lines v. Maltbie, 183 Misc. 924, 929, 51 N. Y. S. (2d) 841, 845. We think it clear from the canon of construction above quoted and the definitions of the terms "proceedings," "commission," and "board" that the school board of Independent School District No. 810 is a commission within the meaning of § 3.16 and that said statute applies in this case.

■ The respondent school district herein points out that relator employed Senator Dunlap at a time when they both knew that any service performed by the senator must be completed prior to April 1, 1961, and that Senator Dunlap would then be engaged as a member of the Sixty-second Minnesota Legislature.

In that connection it might be well to note the legislative history of § 3.16 in regard to the foregoing question. This section is derived from L. 1909, c. 51, § 1, which provided that the attorney's retainer must antedate the beginning of the legislative session. When this statute was amended by L. 1929, c. 19, § 1, the requirement that the retainer antedate the session of the legislature was dropped. The deletion of this provision from the statute made manifest the intent of the legislature that this requirement should no longer be the rule.

The relation of an attorney to his client has always been considered one of a highly personal character, somewhat akin to the relation of the priest or the minister to his parishioner, or the physician to his patient. Courts have held that a litigant shall be entitled to call to his aid the lawyer or lawyers to whom he prefers to confide the care of an undertaking of importance to him.

Should the relator desire to have the proposed hearing by the school

board reviewed, this can be done only by certiorari. Under the circumstances it would become important to the relator that the record of the proceedings taken by the board be clear and complete for review purposes. See, State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544; Sellin v. City of Duluth, 248. Minn. 333, 80 N. W. (2d) 67.

It is also clear from the provisions of § 3.16 that public policy requires that members of the legislature, who are also attorneys in private practice, are not called away from their legislative duties during the session of the legislature.[3]

■ The respondent school district has urged that to delay the termination hearing beyond April 1 would prevent the board from conducting its proper functions. As already noted, § 125.12, subd. 3, relates to teachers' contracts and provides that under certain circumstances a teacher's contract will remain in full force and effect unless terminated by a majority roll call vote of the full membership of the board before April 1 of each year. This court has held that the April 1 provision was originally written into the law to protect the teachers. See, Downing v. Independent School Dist. No. 9, 207 Minn. 292, 291 N. W. 613. It appears herein that the relator on March 13, 1961, by his attorney, Senator Dunlap, offered to waive the provisions of § 125.12 which relate to the hearing being held prior to April 1, 1961.

A "waiver" is a voluntary relinquishment of a known right. No consideration is required to support it, and when once established it is irrevocable even in the absence of consideration therefor. Waivers, where they operate to dispense with merely formal requirements in judicial procedure, should be favored, and except as limited by public policy a person may waive any legal right, constitutional or statutory. See, 20 Dunnell, Dig. (3 ed.) §§ 10134, 10134a, and 10135.

In Hosford v. Board of Education, 203 Minn. 138, 141, 280 N. W. 859, 860, this court stated:

"* * * The tenure act also secures a teacher against demotion

---

[3]See, Bottoms v. Superior Court, 82 Cal. App. 764, 256 P. 422; Barton-Mansfield Co. v. Higgason, 192 Ark. 535, 92 S. W. (2d) 841.

except for cause after a hearing. But this certainly does not prevent a demotion at the request of or with the consent of the teacher."

See Downing v. Independent School Dist. No. 9, *supra,* wherein this court discussed L. 1937, c. 161, the forerunner of § 125.12, and said (207 Minn. 297, 291 N. W. 616):

"* * * Under it a dead line of April 1 was fixed. If no termination had been made prior thereto and adequate notice given to the teacher, *absent mutual consent by the teacher and the board,* the contract continued in full force and effect." (Italics supplied.)

It is thus apparent we think from the above consideration of waiver and consent that the courts recognize that upon the mutual consent of the teacher and the school board the April 1 deadline may be extended and it is not the absolute deadline under all circumstances that respondent urges. There appears to be no good reason why the respondent school board cannot proceed to its hearing under § 125.12 after the close of the legislative session under the circumstances and in view of the voluntary waiver and consent by relator.

The writ is made absolute.