In the Matter of the WELFARE OF B.C.G., a child.

No. C4–95–524.

Court of Appeals of Minnesota.

Sept. 26, 1995.

John M. Stuart, State Public Defender, Charlann E. Winking, Assistant State Public Defender, Minneapolis, for appellant Child.

Hubert H. Humphrey, III, Attorney General, St. Paul, Todd S. Webb, Clay County Attorney, Scott G. Collins, Assistant County Attorney, Moorhead, for respondent.

Considered and decided by SCHUMACHER, P.J., and KALITOWSKI and PETERSON, JJ.

## OPINION

KALITOWSKI, Judge.

The district court referred appellant for prosecution as an adult. Appellant challenges the district court's decisions not to apply the 1994 amendments to the juvenile reference statute and to refer him for adult prosecution.

## FACTS

Appellant B.C.G. is alleged to have committed criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subds. 1(a), 2, on or about December 21, 1994. Appellant was 17 years old on the date of the alleged offense. On January 11, 1995, authorities filed a juvenile delinquency petition against appellant in Clay County district court.

On January 12, 1995, the state requested that the district court refer appellant's alleged offense for adult prosecution under the 1992 juvenile reference statute. Appellant argued that the 1994 amendments to the juvenile statutes should be applied to his case. The district court ruled that: (1) the unamended 1992 juvenile reference statute applied; and (2) appellant should be referred for prosecution as an adult.

## ISSUE

Did the district court apply the correct statute where appellant's alleged offense occurred on December 21, 1994, and an action was commenced against appellant on January 11, 1995?

## ANALYSIS

The district court denied appellant's request to proceed under the amended 1994 juvenile statute. The court held that the amended statute was to be applied only to offenses occurring on or after January 1, 1995, the statute's effective date. Because statutory construction is a question of law, this court may review the district court's decision de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n.*, 358 N.W.2d 639, 642 (Minn.1984).

■ The 1992 juvenile statutes provided for a process of adult reference for children over 14 who commit a criminal act. Minn. Stat. § 260.125 (1992). In 1994 the legislature replaced the reference procedure with a certification procedure. Minn.Stat. § 260.125 (1994). In addition, the 1994 amendments created a category of juvenile prosecutions entitled Extended Jurisdiction Juvenile (EJJ). Minn.Stat. § 260.126 (1994). If a case is designated EJJ, upon a finding of guilt the district court must impose both a juvenile disposition and a stayed adult criminal sentence. Minn.Stat. § 260.126, subd. 4(a) (1994). Under EJJ the district court has jurisdiction over a child until age 21. Minn.Stat. § 260.181, subd. 4(b) (1994).

The relevant sections of the 1994 amendments, including the EJJ procedure, were explicitly made "effective January 1, 1995." 1994 Minn. Laws ch. 576, § 68. The district court interpreted this section as requiring that the *offense* for which a juvenile is being certified must have occurred on or after January 1, 1995, for the amendments to apply.

The Minnesota Rules of Juvenile Procedure, which implement the new certification and EJJ process, were adopted to

> govern *actions commenced or arrests made after* 12 o'clock midnight January 1, 1995 * * *.

Minn.R.Juv.P. 32 and 32A (1995) (emphasis added). These rules were adopted by the Minnesota Supreme Court by order dated December 1, 1994.

■ Generally, to the extent there is a conflict between a statute and a rule of court the statute overrides the rule. *State v. Foncesa*, 505 N.W.2d 370, 372 (Minn.App. 1993). Therefore, we must determine whether there is a conflict between the effective dates of the amended 1994 juvenile statutes and the 1995 rules of juvenile procedure. We conclude there is no conflict between the statute's January 1, 1995, effective date and the rule provision that the statute applies to all actions or arrests commenced after that date.

This conclusion is supported by the statute's language. The new certification procedure provides that

> [w]hen a child is alleged to have committed, after becoming 14 years of age, an offense that would be a felony if committed by an adult, the juvenile court may enter an order *certifying the proceeding* to the district court for action under the criminal laws.

Minn.Stat. § 260.125, subd. 1 (1994) (emphasis added). Likewise, concerning the EJJ process, the statute provides:

> [a] *proceeding* involving a child alleged to have committed a felony offense is an extended jurisdiction juvenile prosecution if: * * *.

Minn.Stat. § 260.126, subd. 1 (1994) (emphasis added). Both provisions state that it is the "proceeding" rather than the alleged violation that is to be certified or designated. Minn.Stat. §§ 260.125–126 (1994). The legislature's specific and consistent reference to the "proceeding" supports the conclusion that the relevant date for determining whether the amendments apply is the date juvenile proceedings are commenced against the child.

This interpretation is also supported by the fact that the 1994 amendments to other sections of the juvenile statutes were made applicable to "violations occurring on or after" August 1, 1994. 1994 Minn. Laws ch. 576, § 68. Had the legislature wanted the date of the violation to determine whether the amendments to the reference procedure are applicable, it would have so provided.

Finally we note that the 1992 juvenile reference statute states:

> When a child is alleged to have violated a state or local law or ordinance after becoming 14 years of age the juvenile court may enter an order *referring the alleged violation* to the appropriate prosecuting authority for action under laws in force governing the commission of and punishment for violations of statutes or local laws or ordinances.

Minn.Stat. § 260.125, subd. 1 (1992) (emphasis added). Thus, the alleged violation was the primary focus under the former reference procedure. The 1994 amendments establishing the certification process, however, now focus on the juvenile proceedings.

Respondent argues that to apply the 1994 amendments to appellant would result in an unconstitutional ex post facto application of the law. The Minnesota Constitution provides that no ex post facto law shall be passed. Minn. Const. art. I § 11. A law is ex post facto when it applies to events occurring before its enactment and disadvantages the offender affected by it. *State v. Harrington,* 504 N.W.2d 500, 503 (Minn.App. 1993) (citing *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)), *review denied* (Minn. Sept. 30, 1993).

Appellant contends that because he is not disadvantaged by the 1994 amendments, application of the amendments does not result in an ex post facto law. In addition, he argues that even if applying the amendments results in an ex post facto application of the law, he has voluntarily waived his right to this protection.

We need not determine whether applying the amended 1994 juvenile statutes and rules to appellant's case results in an unconstitutional ex post facto application of the law because we conclude appellant has knowingly and voluntarily waived his protection against ex post facto application of the new law. Generally, waiver of constitutional protections is allowed. *Ruzic v. City of Eden Prairie,* 479 N.W.2d 417, 420 (Minn.App. 1991). A waiver is a voluntary relinquishment of a known right, and is generally favored. *Id.* at 419 (quoting *State ex rel. Johnson v. Independent Sch. Dist. No. 810, Wabasha County,* 260 Minn. 237, 246, 109 N.W.2d 596, 602 (1961)). Except as limited by public policy a person may waive any legal right whether constitutional or statutory. *Id.* In addition, courts in other jurisdictions have specifically allowed waiver of ex post facto protection. *Melson v. United States,* 505 A.2d 455, 456 (D.C.App.1986).

Appellant, through counsel, appears to understand the implications of waiving protection against ex post facto application of the amended 1994 juvenile statutes and rules. At the January 27, 1995, district court hearing concerning which statute would govern this case, appellant argued that he should be allowed to waive ex post facto protection in order to receive what he perceives to be the mitigating effects of the amended 1994 juvenile statutes and rules.

The ex post facto prohibition is a protection for the individual against hostile government action. *Id.* We conclude that under these facts there are no policy reasons for denying appellant the ability to waive this constitutional protection. Therefore, even if application of the amended 1994 juvenile statute and rules to offenses committed prior to January 1, 1995, results in an ex post facto law, in this case appellant has effectively waived this constitutional protection.

Because of our conclusion that the district court applied the wrong law, we do not address appellant's argument that the district court abused its discretion in referring appellant for prosecution as an adult under the 1992 law.

## DECISION

The district court erred in applying the unamended 1992 juvenile statute and rules to appellant's case. The district court's decision is reversed and this matter is remanded for further proceedings. On remand the district court shall determine whether to certify appellant as an adult and whether to designate appellant's proceeding EJJ under the factors provided in the amended 1994 juvenile statute and rules.

**Reversed and remanded.**